**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

MADELYN B. BARNES
By and On Behalf of the United States of America,
Relator

State of New York, ex rel.
Madelyn B. Barnes, Relator,

vs.

HealthNow New York, Inc.,
BlueCross BlueShield of Western New York,
BlueShield of Northeastern New York.

Defendants.

**COMPLAINT**

Case No. _____

---

## INTRODUCTION

1.      HealthNow New York, Inc. d/b/a BlueCross BlueShield of Western New York, and BlueShield of Northeastern New York (hereinafter collectively known as "HealthNow") is licensed to operate in New York State as a health services corporation under Article 43 of the New York Insurance Law and has a certificate of authority under Article 44 of the Public Health Law to operate as a health maintenance organization.  HealthNow offers and administers health care coverage to individuals, private and governmental employers, labor unions and trusts, and government program health benefits including, among other things, the Medicare, Medicaid, Federal Employee Program ("FEP") and Federal Employees Health Benefits Program (FEHBP).

2.      FEHBP is the world's largest employer-sponsored group health insurance program and insures approximately eight million people.  FEHBP provides health care coverage to

1

millions of federal employees, retirees, and their dependents through health insurance carriers that contract with Office of Personnel Management ("OPM").

3.     HealthNow is a carrier that offers FEHBP plans in which eligible individuals may enroll to receive health care benefits.

4.     As a current carrier and since at least 1998, HealthNow has contracted with OPM to allow it to offer FEHBP plans.

5.     Contracts are negotiated directly by OPM and HealthNow, following an invitation by OPM to all comprehensive medical plans to submit an application to offer FEHBP plans.

6.     The contracts executed by HealthNow and OPM require that HealthNow establish a program to prevent, detect, and eliminate fraud and abuse.  According to OPM, fraud and/or abuse in FEHBP plans contributes to increased health care costs and may be reflected in the premiums for FEHBP enrollees.

7.     In accordance with 48 CFR 1609.701, HealthNow as a provider of FEHBP plans, was contractually required to avoid fraud and have systems to ensure accurate accounting reports of actual, allowable, allocable, and reasonable costs incurred in the administration of the contract.

8.     Under 48 CFR 1609.701, prohibited conduct in the administration of FEHBP plans includes the presentation of false claims by charging expenses to the contract which according to the contract terms are not chargeable to the contract, repeatedly and knowingly providing false or misleading information in the rate setting process, and/or failure to have an accounting system that is incapable of separately accounting for costs incurred under the contract and/or that lacks the internal controls necessary to fulfill the terms of the contract.

9.      HealthNow also offered Federal Employee Programs plans as a result of its association with the Blue Cross Blue Shield Association ("BCBSA"), a direct contractor that administers FEP plans for OPM.  HealthNow provides information on costs, premiums, and statistical information to BCBSA which it includes in its submissions to OPM.

10.      HealthNow currently and at least since 1998 has participated in the Medicare Advantage Program that is administered by the U.S. Department of Health and Human Services, Centers for Medicare and Medicaid Services (CMS). The Medicare Advantage Program allows senior citizens who are eligible for traditional Medicare to enroll in Medicare Advantage Plans administered by private Health Maintenance Organizations (HMO), such as HealthNow, for the management and payment of their health care claims.

11.      Under a Medicare Advantage Plan, the HMOs submits bids on an annual basis, which includes data on the previous years' per-enrollee costs, its anticipated per-enrollee costs (less anticipated co-pays and premiums paid directly by enrollees), and the amount of profit is anticipates receiving per enrollee. The sum of the anticipated costs and profit constitutes the plans "bid" or request to the government. Unless the stated costs exceed a "benchmark" set by the government, the plan is paid the full stated cost per enrollee. Additionally, the plan is paid 75% of the difference between the "benchmark" and the full stated cost amount.  This 75% difference, known as a "rebate", must be used by the HMO to lower premiums to the enrollees and/or offer more benefits.

12.      Under the Medicare Advantage Rules, the HMOs are not permitted to claim a profit margin that exceeds the profit margins on their commercial lines of business by more than 1.5%.

13.     Medicare Advantage Plans are required to establish and maintain contracts with participating providers that set forth the rates and process for payment and include other terms and conditions required by the Medicare Advantage program.  These agreements are reviewed by CMS as part of the Plan Application review and approval process.

14.     HealthNow has also violated the New York State False Claims Act because state and municipal payors have overpaid claims and have paid overstated premiums because of HealthNow's failure to adhere to the contractual lesser of language.

**15.**     Specifically, overpayments were made for services rendered to individuals with School District Traditional Experience Rated Plans, Experience Rated RSR (retrospective rating) Plans, and Traditional +65 Experience Rated or Minimum Premium Plans or ASC Plans.

16.     Upon informationa and belief there were future policy year overstatements of premiums/inflated premiums charged based on the overcharges for School District Traditional Experience Rated Plans, Experience Rated RSR (retrospective rating) Plans, and Traditional +65 Experience Rated or Minimum Premium Plans or ASC Plans.

17.     Overpayments were also made by School District and Municipal Administrative Service Only ("ASO") Plans.  An ASO plan is an arrangement in which an organization funds (self insures) its own employee health insurance program but hires an outside firm to perform administrative services. For example, an organization may hire an insurance company to evaluate and process claims under its employee health plan while maintaining the responsibility to pay the claims itself.

18.     HealthNow assumed no insurance risk for the ASO plans, therefore the overcharges were born completely by the school district or municipality and its members/policyholders.   Alleghany Cattaragus Schools, Orchard Park Schools, and the

4

Schenectady Central School District are just a few of the ASO plans directly harmed by HealthNow's conduct.

19.     Upon information and belief, HealthNow has also violated the New York State False Claims Act by overcharging and inflating premiums for Medicaid prepaid health plans.

## OVERVIEW OF THE SCHEME

20.     Since at least 1998 and up to and including 2013, HealthNow's hospital contracts, which was inclusive of services provided to Medicare Advantage participants, incorporated the following language:

> "For Hospital Services provided to Covered Persons, Hospital shall be paid in accordance with the rates of payment set forth in Exhibit I to this Attachment (the Rate Exhibit) and the terms and conditions set forth herein.  Hospital agrees to accept such compensation as compensation in full for all Hospital Services rendered to Covered Persons, minus any applicable coinsurance, copayment, and/or payment set forth herein are greater than Hospital's charges for the item, service or admission, Health Plan and/or Self-Insurers, as applicable, shall remit the charged amount to Hospital, less any Cost Sharing Amounts".

21.     Similar contractual language with a "lesser of" clause appears in contracts with skilled nursing facilities, ambulatory surgery centers, and home health care providers throughout New York State, all of which service Medicare Advantage participants and individuals with FEHBP plans.

22.     Despite language that hospitals that charge a lesser rate for a service than what is provided for on the Rate Exhibit shall only be reimbursed for the lesser rate, HealthNow reimbursed the hospitals only using the Rate Exhibit.  This resulted in significant overpayments to facilities across New York State when those facilities submitted claims with charges that were lower than the amount set forth in the Rate Exhibit.

23.     In July 2013, HealthNow's Reimbursement Integrity Unit analyzed data on contract compliance as part of routine internal auditing and compliance oversight.

24.     During its review, the HealthNow Reimbursement Integrity Unit discovered that for at least sixteen (16) years (since the implementation of the Facets software program), HealthNow had disregarded or ignored  its contractual provisions which required that HealthNow pay only the "lesser of" charge for services provided at hospitals, skilled nursing facilities, and ambulatory surgery centers, and by home health care providers.

25.     As explained above, the "lesser of" amount is determined by looking at the Rate Exhibit on the facility contract and comparing it with the facility's actual charge, which may be less than what the Rate Exhibit to the facility contract allowed.

26.     HealthNow consistently failed to compare the contract Rate Exhibit with the actual charge when processing payments.

27.     Upon information and belief, HealthNow never assessed the configuration of the Facets software it began using in 1998 to ensure that it was properly processing payment amounts that were consistent with the contract with the facility.

28.     Relator Madelyn B. Barnes is a Provider Auditor in the Reimbursement Integrity Unit for HealthNow New York, Inc./BlueCross BlueShield of Western New York.

29.     Over the past sixteen (16) years, HealthNow has been overcharging its clients, including, but not limited to the Federal and New York State governments and New York municipalities.

30.     Likewise, for the past sixteen (16) years, HealthNow has been submitting bids to the Federal and State government for its participation with Medicare Advantage Program, based on per-enrollee cost figures that were grossly above what should have been the actual costs of the

program under the Medicare Advantage participating provider agreements; hence the monies received pursuant to those contracts with the Federal and State governments were higher than they should have been.

31.    Furthermore, for the past sixteen (16) years, HealthNow has been filing applications with OPM to obtain contracts to allow it to offer FEHBP plans based on per-enrollee cost figures which were grossly above what should have been the actual costs of the FEHBP plans.    Hence the costs stated in its application were grossly inaccurate, the reimbursements received were grossly inaccurate, and the premiums based on the overstated costs were both grossly inaccurate and grossly inflated.

32.    The overpayments were a result of HealthNow's failure to properly adhere to contractual requirements regarding payments for services to hospitals, skilled nursing facilities, and ambulatory surgery centers, and home health care providers throughout New York State.

33.    In addition to causing higher costs to the Medicare Advantage Program than warranted under the participating provider agreements, these overpayments made to facilities also resulted in higher charges to Medicare Advantage enrollees and FEHBP enrollees in the form of costs charged for deductibles, copayments and/or coinsurance amounts (Cost Sharing Amounts).

34.    In meetings held to discuss the overpayment issue, HealthNow alleged that in 1998 its billing program, Facets, was unable to properly apply the lesser of contractual provisions.

35.    However, the Facets MIS system had the capability of properly applying the "lesser of" contractual language, but it was configured improperly.

36.     Moreover, it appears that HealthNow never reviewed or spot checked payments or charges against the actual contractual terms to ensure that they were being calculated properly by Facets and were consistent with contractual terms.

37.     HealthNow continued to submit cost reports, FEHBP applications, and bids based on said data that they knew or should have known was not accurate reflection of the correct costs that HealthNow was responsible for paying under the Medicare Advantage program, resulting in false information being presented to the Government and inducing payment thereto.

38.     The Medicare Advantage contracts and Medicare advantage regulations required HealthNow to certify that their per-enrollee costs were based on correct data.

39.     HealthNow certified year after year that their per-enrollee costs were based on correct data.

40.     The applications submitted by HealthNow for OPM contracts required that the information contained therein is accurate.   Moreover, the contracts negotiated with OPM required that all financial information provided to OPM related to the administration of FEHBP plans be accurate.  Finally, HealthNow was required to certify that it was providing accurate data to OPM when negotiating the premium rates, the net to carrier rate, and any community rating (rates based on the carriers past experience with the community to be served).

41.     HealthNow's failures have resulted in significant overpayments since 1998, when the new computer software program Facets was installed.

42.     The overpayments have resulted in overcharges to both private and public payers.

43.     Had HealthNow properly enforced its contractual provision, and fulfilled its obligation to properly audit their cost data prior to certifying such information to the Government, the cost to the client/patient/payer would have been substantially less.

8

44.     For example, in 2012, HealthNow overpaid $5,631,694.00 for services utilized at certain hospitals.

45.     In 2013, HealthNow overpaid $6,485,850.00 for services utilized at certain hospitals.

46.     Pursuant to the Compliance Audit and Monitoring Policy in place in 2013, HealthNow, it is the responsibility of the Internal Audit Department and Corporate Compliance Department to conduct ongoing audits to ensure compliance with all federal, state, and local laws and regulations. Once a deficiency or concern is identified, it is the duty of the COO to verify completion of the audit, compliance with corrective measures, and validate corrective measures that address any weaknesses identified during an audit.

47.     In HealthNow's policy, specific mention is made respecting additional fraud, abuse, and False Claims Act concerns related to reimbursements from the Medicare and Medicaid programs.

48.     Prior to 2013, HealthNow had similar policies which required compliance with all federal and state laws.

49.     Starting in 2013 there were numerous internal discussions between the Recovery Integrity Unit, the Compliance Officer and Legal Department, business side personnel, and high level management over how to address the issue of overpayments which the Recovery Integrity Unit has discovered.

50.     Senior management and executives at HealthNow were aware of and continue to be aware of the overpayments as they have been informed and kept apprised of the issue by its legal counsel and compliance officers.

51.     After reviewing the significant overpayments made since 1998, managers at HealthNow decided against recoupment of the overpayments.

52.     Upon information and belief, HealthNow failed to disclose the issue to CMS, OPM, or New York State.

53.     In addition, HealthNow failed to calculate the amount of overcharges for Cost Sharing Amounts to Medicare Advantage enrollees and failed to refund any such overcharges to Medicare Advantage enrollees.

54.     HealthNow also failed to calculate the amount of overcharges for Cost Sharing Amounts or premium inflation for FEHBP enrollees and failed to refund any such overcharges to FEHBP enrollees.

55.     Upon information and belief, the decision not to recoup overpayments was based on a desire to maintain positive business relationships with the facilities as well as to avoid disclosure to not only the Federal government but also to New York State and its group purchasers (including self-funded and ASO groups) and plan enrollees.

56.     During all of the discussions, it was clear that HealthNow's focus was on maintaining positive business relationships with impacted facilities.

57.     In addition, the focus was on avoiding generating Explanations of Benefits ("EOBs") due to reprocessing of claims.   HealthNow's administration expressed a desire to minimize the questions regarding how far back the overpayments went, which they believed would only lead to further questions and a negative impact on business.

58.     Upon information and belief, no senior members of management at HealthNow was interested in calculating, addressing or disclosing the extent to which overcharges had

adversely impacted consumers and purchasers, including but not limited to Federal and State governments.

59.     Upon information and belief, HealthNow did not want to revise its premium rates and potentially collect lower premiums from its clients and was concerned that the disclosure of the long term erroneous payments would cause it to group clients.

60.     Rather, upon information and belief, HealthNow decided that it would treat the "savings" that resulted from proper adherence to contractual terms going forward as "cost savings" in actuarial reports made to the Federal government as part of the requirements of the Patient Protection and Affordable Care Act of 2010, Pub. L. No. 111-148, 124 Stat. 119, 753-56 (2010) and CMS filings under the Medicare Advantage Program.

61.     The Reimbursement Integrity Unit, at the direction of HealthNow management, some overpayments for provider categories other than hospitals were booked in their financial reports as "Identified Not Recovered."   The Unit was then instructed to consider the matter closed.

62.     Specifically, Christine Blidy announced at a meeting held on June 2, 2014, that the book amount identified as overpaid for the "lesser of" that was not going to be recovered or recouped would be booked as "affordability" under the new healthcare laws.

63.     Not adjusting the claims which were overpaid negatively impacts all members and payers that paid for certain services at hospitals, skilled nursing facilities, and/or ambulatory surgery centers.   The failure to adjust results in a loss for the Federal government, New York State and members who have overpaid a portion or share of the liability for the services provided.

64.     For example, not correctly adjusting the claims going back to the contract dates negatively impacts the members for any contracts that have a member share/liability portion.  If a member had a 20% coinsurance then by adjusting claims to the lower ('lesser of') the member's portion would be decreased.   Therefore if the original cost was $1,000.00 then a 20% member share would be $200.00.   However, if the cost applying the 'lesser of' language the cost decreased to $500.00, then the 20% member share would fall to $100.00.

65.     The specific example provided in Paragraph [46] was also given to HealthNow's administrators, members of the Corporate Overpayment & Recoveries department, and the Legal Department and Compliance Officer in an effort to encourage disclosure.

66.     Relator Madelyn Barnes continued to push for review of contracts to determine the full scope of the overpayments and to push for repayment; however, HealthNow's administrators directed that the issue be dropped and stated that only very limited recoveries would be pursued.

67.     In e-mail correspondence in 2013 and 2014, HealthNow notified hospitals, skilled nursing facilities, and ambulatory surgery centers that it had failed to properly adhere to the contract to the benefit of the facility.   Specifically, HealthNow wrote "It has come to our attention that our system has incorrectly processed claims and has not applied 'lesser of' methodology.  In accordance with your contract language, please be advised that all services rendered on (or discharged) after November 1, 2013 will process with the 'lesser of' amount.

68.     No mention of recoupment or recovery of overpayments was made.  In fact, with many of the facilities, no one at HealthNow even raised the potential for recoupment of overpayments.

69. For some facilities, specifically three (3) Buffalo area hospitals, recoveries for overpayments were requested by HealthNow, but when the hospitals objected the recoveries were put on hold and the request was essentially rescinded.

70. Upon information and belief. The requests for repayment were rescinded and/or abandoned all in effort to maintain business between HealthNow and the subject facilities.

71. Additional notifications to Buffalo area hospitals and other facilities (skilled nursing and ambulatory surgery centers) were sent out at the end of September 2014. The notification was a "STAT Bulletin" which contained a "Reimbursement Clarification." The notice stated: "We have discovered that our system may not have correctly processed certain claims for your facility" and stated "Updates have been made to our system; going forward, all claims will be processed appropriately. Per your contact with Blue Cross Blue Shield of Western New York, your facility will be paid our contracted rates or your billed charges, whichever is less."

72. With respect to Albany area hospitals, HealthNow elected to not pursue recoveries for overpayments and instead opted to use it as a negotiating tool and never notified the government or private consumers that they had overpaid for services received at those hospitals.

73. In fact, Relator Madelyn Barnes has possession of copies of contracts to the Albany area hospitals, anticipated to be in effect from 2013 forward, which specifically forgives the overpayments.

74. The Federal Anti-Kickback statute makes it a crime to knowingly and willfully offer, pay, solicit or receive remunerations to induce a person to refer an individual to a person for a service covered under a Federal healthcare program, or, to purchase, lease, order, or arrange

for or recommend any good, facility service, or item covered under a Federal healthcare program.

75.     Under the Federal Anti-Kickback Statute, 42 U.S.C 1320, an act is willful if the act is "committed voluntarily and purposefully, with the specific intent to do something the law forbids, that is with a bad purpose, either to disobey or disregard a law".

76.     The Anti-Kickback Statute has been interpreted to cover any arrangement where one purpose of the remuneration was to obtain money for the referral of services or to induce further referrals or to otherwise generate business between the parties.

77.     Upon information and belief, HealthNow forgave overpayments to induce the facilities to continue doing business with HealthNow among other things, as participating providers in its FEHBP plans, Medicare Advantage programs and other health insurance programs offered by HealthNow, in violation of the Federal Anti-Kickback Statutes.  Further, their intent to waive the overpayments was directly reflected in several revised participating provider agreements.

78.     HealthNow ran an analysis of the potential recoveries and determined that during 2013 alone, including private (non-Medicare/Medicaid) claims, there were almost $52,000,000.00 in overpayments.

79.     Any claims submitted to the Federal, State government or to any client in 2013 or 2014 (after HealthNow learned of the overcharges) which were not properly reviewed to ensure accuracy constitute the knowing submission of a false claim under either the Federal or state False Claims Act.

80.     When looking only at one individual hospital for 2012-2014 time period, over $200,000.00 in overpayments were made on claims paid by Medicare, Medicare Risk Community Rated, Medicare Risk Direct Pay, and/or Managed Care Health New York plans.

81.     That number does not included all of the overpayments made on plans administered by New York State municipalities, school districts, SUNY schools, and public unions.

82.     Moreover, even after discovering the issue in July of 2013, no immediate changes were made and HealthNow continued to overpay and pass along the cost to the consumer.  For the 2014 year there were over approximately $33,000,000.00 in overpayments.

83.     The above-referenced figures are limited to inpatient hospital payments and do not include payments to skilled nursing facilities, ambulatory surgery centers, or home health facilities.

84.     The additional cost that resulted from the failure to properly comply with contractual requirements/agreements was passed onto the client/patient or its payer, including the federal government.

## JURISDICTION AND VENUE

85.     This Court has jurisdiction over the Federal False Claims Act claim in this action pursuant to 33 U.S.C. § 3730 and 28 U.S.C. § 1331.

86.     This Court has jurisdiction over the Federal Anti-kickback Statute. 42 U.S.C § 1320.

87.     This Court has jurisdiction over the New York State False Claims Act claim pursuant to 28 U.S.C. § 1367.

88.     Venue lies in this District pursuant to 33 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and 1391(c), because the Defendant is located within this District and because some of the false or fraudulent acts set out in 31 U.S.C. § 3729 occurred in this District.

89.     The False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA"), reflects Congress's objective to "enhance the Government's ability to recover losses as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (1986), available at 1986 U.S.C.C.A.N. 5266. As relevant here, the FCA establishes civil penalties and treble damages liability to the United States for an individual or entity that: knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(G).

90.     "Knowing," within the meaning of the FCA, is defined to include reckless disregard and deliberate indifference to the truth or falsity of the information. Id. § 3729(b)(1). And an "obligation," under the statute, includes the "retention of any overpayment." Id. § 3729(b)(3).

91.     Section 6402(a) of the Patient Protection and Affordable Care Act of 2010 (Enhanced Medicare and Medicaid Program Integrity Provisions), Pub. L. No. 111-148, 124 Stat. 119, 753-56 (2010), amended the Social Security Act by adding a new provision that addresses what constitutes an overpayment under the FCA in the context of a federal health care program. Under this section, an overpayment is defined as "any funds that a person receives or retains under Title XVIII or XIX to which the person, after applicable reconciliation, is not entitled." See 42 U.S.C. § 1320a–7k(d)(4)(B). In addition, this provision specifies in relevant part that an

"overpayment must be reported and returned" within "60 days after the date on which the overpayment was identified." Id. § 1320a–7k(d)(2).

92.     Failure to return any overpayment, such as each of the claims on which HealthNow received an overpayment from Medicare or Medicaid, constitutes a reverse false claim actionable under section 3729(a)(1)(G) of the FCA.   Under the Act, the federal government is entitled to recover three times the amount of each claim and, for each claim or overpayment, a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461; Public Law 104-410), plus three (3) times the amount.

93.     CMS has also taken steps in the Government's comprehensive efforts to identify improper Medicare payments, fight fraud, waste, and abuse in the Medicare program.   In February of 2012, pursuant to the Affordable Care Act, CMS proposed that overpayments must be reported and returned if the overpayment is identified within 10 years of the date the overpayment was received. As described in the proposed rules, CMS selected the 10 year look back period because, among other things, "this is the outer limits of the False Claims Act statute of limitations." See Federal Register Vol. 77 No.32, Feb. 16, 2012 at p.6.

94.     New York's False Claims Act follows the FCA and defines its requirements in the same manner as the Federal government. A person or company found liable under New York's False Claims Act must generally pay treble damages, civil penalties, plus costs and attorney's fees.

## PARTIES

95.     The first plaintiff in this action is the United States of America by and through relator Madelyn Barnes.  At all times material to this action, CMS was an agency of the United

States and administered the Medicare Advantage Program, which paid benefits from funds provided by the Federal Government. CMS provided Medicare benefits to qualified recipients, which included payments of claims to the defendants for their provision of benefits to the Medicare Advantage members.   These claims were paid based on the defendant's false representations that the data it provided to CMS in its Medicare Advantage bids were accurate and true.

96.     The second plaintiff in this action is the State of New York by and through relator Madelyn Barnes. At all times material to this action, the State of New York is a state of the United States of America, and is responsible for establishing and maintaining a program for medical assistance under Title XIX of the Social Security Act.  The State of New York receives federal matching funds to pay for costs of the New York Medicaid Program.

97.     Relator Madelyn Barnes is an individual, currently and at all times relevant hereto, employed by the defendant HealthNow, as a Provider Auditor in the Reimbursement Integrity Unit. Internal, non-public information known to the relator, in conjunction with any public bid information, serves as the basis for this action.

98.     Defendant HealthNow New York, Inc., BlueCross BlueShield of Western New York, and BlueShield of Northeastern New York, is a New York corporation with its principal place of business at 257 West Genesee Street Buffalo, NY 14202-2657. At all times relevant hereto, HealthNow conducted business in New York, including but not limited to providing healthcare services to the general public in New York.

## AS AND FOR A FIRST CAUSE OF ACTION
### (False Claims Act, Presenting False Bids)

99.     Relator Madelyn Barnes incorporates by reference and restates all of the allegations set forth in paragraphs 1-98 as if fully set forth herein.

18

100.    Defendant knowingly, as defined in 31 U.S.C 3729(b)(1) presented or caused to be presented false claims for payment or approval to an officer or employee of the United States.

101.    Defendant knowingly presented false records and statements, including but not limited to premium bid filings, bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges by the Medicare program that were higher than they were permitted to claim or charge by applicable law.

102.    Defendant submitted ACR and bid filings that were based on inflated cost data that it knew to be inaccurate or was reckless as to its inaccuracy.

103.    Specifically, but for the continued and concerted decision to maintain higher costs for its facilities, Defendant cost reports and bid amounts would have been lower and Defendant would have been required to accept lower premium rates from the United States for the Medicare Advantage Program.

104.    The conduct of the defendant in the submission of each ACR and bid filing constitutes a separate false claim under 31 USC 3729(a)(1)(A), causing the United  States to sustain damages in an amount according to proof.

## AS AND FOR A SECOND CAUSE OF ACTION
### (False Claims Act, Presenting False Certifications In Order to Obtain Payment)

105.    Relator Madelyn Barnes incorporates by reference and restates all of the allegations set forth in paragraphs 1-104 as if fully set forth herein.

106.    Defendant was required under the Social Security Act, CMS regulations and the Medicare Advantage Contracts to submit annual certifications covering, among other things, the accuracy, completeness and truthfulness of bid and payment data and that it is not aware of any overpayments made by CMS under the Medicare Advantage Program.

107.    Defendant knowingly made, used, and caused to be made and used false certifications to CMS that its bid submissions were accurate, complete and truthful;

108.    Defendant made, used, and caused to be made and used false certifications to CMS that its that its reported data was accurate, complete and truthful;

109.    Defendant made, used, and caused to be made and used false certifications to CMS that its that its data for the reporting and return of overpayments was accurate, complete and truthful;

110.    HealthNow has an obligation to ensure that all claims, and all documents and data upon which those claims were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

111.    HealthNow made and used or caused to be made or used false records or statements material to an obligation to pay or transmit money to the United States, or knowingly concealed, avoided, or decreased an obligation to pay or transmit money to the United States.

112.    Such false records or statements or knowing concealment, avoidance or decrease of an obligation to pay or transmit money to the United States were made or done knowingly, as defined in 31 U.S.C.§ 3729(a)(1).

113.    Each false certification made to obtain payment is a distinct false claim made by the defendant in violation of  31 USC 3729(a)(1)(A) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

### AS AND FOR A THIRD CAUSE OF ACTION
(False Claims Act, Making or Using False Records or Statements
Material to Payment or Approval of Bids)

114.    Relator Madelyn Barnes incorporates by reference and restates all of the allegations set forth in paragraphs 1-113 as if fully set forth herein.

115.    Defendant knowingly made or used false records or statements material to false or fraudulent claims.

116.    Defendant knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to ACR and bid filings, bills, invoices, requests for reimbursement, and records of services, that were material to the payment or approval of charges by the Medicare Advantage Program that were higher than they were permitted to claim or charge by applicable law.  Among other things, defendant made and used ACR and bid filings that they knew or should have known overstated costs.

117.    Defendant knowingly made, used, and caused to be made and used false certifications that its claims, and all documents and data upon which those claims were based, were accurate and were supplied in full compliance with all applicable statutes and regulations.

118.    Each false certification made by defendant in an effort to obtain approval of bids violated 31 USC 3729(a)(1)(B) and was a substantial factor in causing the United States to sustain damages in an amount according to the proof.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(False Claims Act, Retention of Monies**
**Not Entitled and/or Failure to Report and Recoup Overpayments)**

119.    Relator Madelyn Barnes incorporates by reference and restates all of the allegations set forth in paragraphs 1-118 as if fully set forth herein.

120.    Defendant knowingly made, used or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly avoided or decreased an obligation to pay or transmit money or property to the Government.

121.    As set forth above, defendant received higher sums of money that it was entitled to in response to false and inflated bid data, and avoided its obligation to report and/or return the excess moneys to the Government and/or the individual enrollees.

122.    Defendants not only failed to recoup any overpayments from providers, but actively decided not to pursue recovery of the overpayments.

123.    Defendant failed to notify the Federal and New York State government of the overpayments.

124.    Defendants failed to notify its individual members of the overpayments, including but not limited to the improper calculations which led to higher co-pays and/or higher premiums on an annual basis to the individuals enrolled in the Medicare Advantage Programs.

125.    The conduct of the defendant violated 31 USC 3729(a)(1)(G) and was a substantial factor in causing the United States to sustain damages in an amount according to the proof.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(False Claims Act, Retention of Monies**
**Medicare Advantage Cost Sharing Amounts)**

126.    Relator Madelyn Barnes incorporates by reference and restates all of the allegations set forth in paragraphs 1-126 as if fully set forth herein.

127.    Defendant knowingly made, used or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly avoided or decreased an obligation to pay or transmit money or property to the Government.

128.    As set forth above, Defendant's actions resulted in Medicare Advantage enrollees paying higher amounts than they were required to pay under their Medicare Advantage Plans for Cost Sharing Amounts.

129.    Defendants failed to adjust its claims records to correctly reflect the Cost Sharing Amounts.

130.    Defendant failed to notify CMS of the overcharging of Cost Sharing Amounts to Medicare Advantage enrollees.

131.    This conduct deliberately avoided the refund of such amounts to Medicare Advantage enrollees.

132.    Defendant's conduct was knowing and intended to avoid recoupment of such overcharged and overpaid amounts by CMS under Medicare Advantage regulations.

133.    The conduct of the defendant violated 31 USC 3729(a)(1)(G) and was a substantial factor in causing the United States to sustain damages in an amount according to the proof.

## AS AND FOR A SIXTH CAUSE OF ACTION
(False Claims Act, Making or Using False Records or Statements
Material to Payment or Approval of Contract Applications)

134.    Relator Madelyn Barnes incorporates by reference and restates all of the allegations set forth in paragraphs 1-133 as if fully set forth herein.

135.    Defendant knowingly made or used false records or statements material to false or fraudulent claims.

136.    Defendant knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to historical cost and premium information

provided to OPM in its FEHBP contract/carrier applications and in applications submitted to OPM by BCBSA related to FEP plans.

137.    Among other things, Defendant submitted applications to allow it to offer FEP and FEHBP plans that they knew or should have known included overstated costs and inflated premiums for the prior years.

138.    With regarding to FEHBP plans, Defendants further negotiated premiums directly with OPM based on false and grossly inflated cost information.

139.    Defendant knowingly made, used, and caused to be made and used false certifications that its claims, and all documents and data upon which those claims were based, were accurate and were supplied in full compliance with all applicable statutes and regulations.

140.    The conduct of the defendant violated 31 USC 3729(a)(1)(B) and was a substantial factor in causing the United States to sustain damages in an amount according to the proof.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### (False Claims Act, Retention of Monies
### FEP and FEHBP Cost Sharing Amounts)

141.    Relator Madelyn Barnes incorporates by reference and restates all of the allegations set forth in paragraphs 1-140 as if fully set forth herein.

142.    Defendant knowingly made, used or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly avoided or decreased an obligation to pay or transmit money or property to the Government.

143.     As set forth above, Defendant's actions resulted in FEP and FEHBP enrollees paying higher amounts than they were required to pay under FEP Plans for Cost Sharing Amounts.

144.     Defendants failed to adjust its claims records to correctly reflect the Cost Sharing Amounts.

145.     Defendant failed to notify BCSA or OPM of the overcharging of Cost Sharing Amounts to FEP or FEHBP enrollees.

146.     This conduct deliberately avoided the refund of such amounts to FEP or FEHBP enrollees.

147.     Defendant's conduct was knowing and intended to avoid recoupment of such overcharged and overpaid amounts by OPM, FEP, or FEHBP enrollees.

148.     The conduct of the defendant violated 31 USC 3729(a)(1)(G) and was a substantial factor in causing the United States to sustain damages in an amount according to the proof.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Violation of the Anti-Kickback Statute)

149.     Relator Madelyn Barnes incorporates by reference and restates all of the allegations set forth in paragraphs 1-148 as if fully set forth herein.

150.     Defendant violated the Federal Anti-Kickback statutes when it made the deliberate and calculated business decision not to pursue overpayments made to facilities where their enrollees receive services, in effort to retain contracts with those facilities.

151.     Defendant made forgiveness of overpayments under a federally funded Medicare Advantage program a specific contract condition in effort to retain business by contracting medical facilities, and in violation of Federal law.

152.    Defendant made the deliberate decision not to further pursue recovery of overpayments from all other facilities to which it provided gross overpayment for services, in violation of Federal law.

153.    The decision to withhold collection of overpaid amounts was "remuneration" within the meaning of Section 1128B of the Social Security Act;

154.    One purpose of the provision of the remuneration was the generation of business between the parties;

155.    The arrangement resulted in payments of claims by the Medicare and Medicaid programs both under the Medicare Advantage program, the Medicaid program and by the Medicare and Medicaid fee-for-service programs under other lines of business covered by the participating provider agreements between Defendant and such providers;

156.    The violation of the Anti-Kickback Statute results in all claims submitted by such parties under the participating provider agreements to Medicare or Medicaid as False Claims.

157.    The conduct of the defendant violated Section 1128B of the Social Security Act (42 USC 1320a-7b) and, consequently, 31 USC 3729(a)(1)(G) and was a substantial factor in causing the United States to sustain damages in an amount according to the proof.

### AS AND FOR A NINETH CAUSE OF ACTION
**(For Violations under New York State Finance Law § 187-**
**New York False Claims Act)**

158.    Relator Madelyn Barnes incorporates by reference and restates all of the allegations set forth in paragraphs 1-157 as if fully set forth herein.

159.    HealthNow made and used or caused to be made or used false records or statements material to an obligation to pay or transmit money to the New York State or its local

governments/municipalities, or knowingly concealed, avoided, or decreased an obligation to pay or transmit money to the New York State and its local governments/municipalities.

160.    Such false records or statements or knowing concealment, avoidance or decrease of an obligation to pay or transmit money to the State of New York were made or done knowingly, as defined in New York State Finance Law § 187 et seq.

**161.**    The false statements related not only to overpayments but also overstated or inflated premiums for many municipal or state funded plans, including ASO Plans and School District Traditional Experience Rated Plans, Experience Rated RSR (retrospective rating) Plans, and Traditional +65 Experience Rated or Minimum Premium Plans or ASC Plans.

162.    Upon information and belief, dalse statements were also made in relation to payments, premiums, and cost reports for Medicaid pre-paid health plans which are paid for by New York State and the county governments.

**WHEREFORE**, on behalf of the United States and the State of New York, Relator Madelyn Barnes requests that judgment be entered against Defendant HealthNow as follows:

a.   Treble the United States' damages, in an amount to be determined at trial, plus an $11,000.00 penalty for each overpayment retained in violation of the federal False Claims Act;

b.   An award of costs pursuant to 31 U.S.C. § 3729(a)(3);

c.   Treble New York States' damages, in an amount to be determined at trial, plus a civil penalty of not less than $6,000.00 nor more than $12,000.00 for each overpayment retained in violation of the New York State False Claims Act;

d.   An award of costs pursuant to New York State Finance Law § 189; and

e.   Such further relief as is proper.

Dated: Buffalo, New York
　　　February 2, 2016

_____
Dennis C. Vacco, Esq.
Colleen K. Mattrey, Esq.
Stacey L.Moar, Esq.
LIPPES MATHIAS WEXLER FRIEDMAN LLP
*Attorneys for Relator Madelyn B. Barnes*
665 Main Street, Suite 300
Buffalo, New York 14203
Tel: (716) 853-5100
Fax: (716) 853-5199
dvacco@lippes.com