**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━

**MADELYN B. BARNES By and on Behalf**
**of the United States of America, Relator, and**
**By and on Behalf of the State of New York,**

                                       **Plaintiff,**

                    **-v-**                                       **16-CV-88-JLS(Sr)**

**HEALTHNOW NEW YORK INC., D/B/A**
**BLUECROSS BLUESHIELD OF WESTERN NEW**
**YORK, AND D/B/A BLUESHIELD OF**
**NORTHEASTERN NEW YORK, NOW KNOWN AS**
**HIGHMARK WESTERN AND NORTHEASTERN**
**NEW YORK INC.,**

                                       **Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━━

<u>**REPORT, RECOMMENDATION AND ORDER**</u>

        This case was referred to the undersigned by the Hon. John L. Sinatra, in

accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #75.


        Plaintiff Madelyn B. Barnes ("Barnes" or "Relator") is the relator in this *qui tam*

action on behalf of the United States of America and New York State under the False

Claims Act, 31 U.S.C. § 3729 *et seq*. ("FCA"), and the New York State False Claims

Act, N.Y. State Fin. Law § 187 *et seq*. ("NYSFCA").  *See* Dkt. #94.  Barnes alleges that

defendant HealthNow New York Inc., d/b/a BlueCross BlueShield of Western New York,

and d/b/a BlueShield of Northeastern New York, now known as Highmark Western and

Northeastern New York Inc. ("HealthNow" or "Defendant") improperly overpaid

healthcare claims at the expense of the United States, New York State, and "local governments/municipalities" by submitting false statements to these entities. *Id*.

Currently before this Court are HealthNow's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Dkt. #86, and motion for leave to file supplement to the record, Dkt. #109. For the following reasons, it is recommended that the motion for summary judgment be granted in part and denied in part, and that the motion to supplement the record be denied.

## FACTUAL BACKGROUND[1]

The United States maintains a healthcare program for federal employees called the Federal Employee Program ("FEP"). Dkt. #86-18 at 1. The United States Office of Personnel Management ("OPM") runs the program. *Id*. at 2. To this end, OPM has an agreement with the consumer health care insurance brand Blue Cross Blue Shield Association ("BCBS") to provide healthcare services. *Id*. HealthNow is a member of BCBS and administers one of the plans within the FEP. *Id*. at 1.

In 2010, OPM sent a notice of audit to BCBS. Dkt. #97-1 ¶ 8. This audit (the "2011 OPM Audit") was issued in 2011, and covered the period between January 1,

---

[1] The following material facts are taken from the HealthNow's statement of undisputed facts (Dkt. #86-17), Barnes' counterstatement to HealthNow's statement of undisputed facts (Dkt. #97-1), and these submissions' accompanying exhibits. Various background facts have been taken from HealthNow's memorandum of law (Dkt. #86-18), Barnes' memorandum of law (Dkt. #97), and the third amended complaint (Dkt. #94). As required, this Court construes the facts in the light most favorable to the non-moving party. *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).

2008, and January 31, 2010.  *Id*. ¶ 9; Dkt. #86-5 at 1.  A final report was issued on

January 31, 2011 (the "2011 Audit Report") summarizing the 2011 OPM Audit's

findings.  *See* Dkt. #86-5 at 1.  The 2011 Audit Report states that the 2011 OPM Audit's

purpose "was to determine whether BCBS plans properly charged the FEHBP for claims

where the amounts paid exceeded covered charges."  *Id*. at 7.

OPM conducted another audit, issued in 2013, covering the period from February

1, 2010, to July 31, 2012 (the "2013 OPM Audit").  Dkt. #97-1 ¶ 14.  A final report was

issued on November 22, 2013 (the "2013 Audit Report") summarizing the 2013 OPM

Audit's findings.  Dkt. #86-6 at 5.  The 2013 Audit Report states that the 2013 OPM

Audit's purpose was "to determine whether the BCBS plans complied with contract

provisions relative to claims where the amounts paid exceeded covered charges."  *Id*. at

7.  The 2011 and 2013 OPM Audits (together, the "OPM Audits") do not expressly

define "covered charges."

Barnes alleges that, in July of 2013, she was working in HealthNow's

Reimbursement Integrity Unit analyzing contract compliance data as a part of routine

internal auditing procedures.  Dkt. #94 ¶ 25.  During this review (the "Barnes Audit"),

Barnes alleges that HealthNow was made aware of an error in its payment processing

software.  *Id*. ¶ 26.  She alleges that this payment processing issue was causing

HealthNow to overpay for certain services in violation of standing contracts with medical

service providers.  *Id*. ¶¶ 26-29.  Specifically, she claims that the contracts with the

medical service providers only required HealthNow to pay for the lesser of either the

actual cost of services provided, or a contractual maximum cost for certain services provided.  *Id*.  However, the payment processing issue was causing HealthNow to pay for the contractual maximum every time, even when the actual cost of services provided was less than this maximum.  *Id*.  She alleges that the software was capable of properly billing the lesser of these figures, pursuant to the contractual terms, but that HealthNow intentionally disengaged or failed to implement this function.  *Id*. ¶ 36.  Accordingly, Barnes alleges that HealthNow was overcharging its clients, including the federal, New York State, and local governments.  *Id*. ¶ 31.  She also alleges that HealthNow was submitting bids to administer other plans based on overinflated per-enrollee cost figures.  *Id*. ¶ 32, 33.

Barnes brought this action against HealthNow as a relator on behalf of the United States and New York State under the FCA and NYSFCA.  *See generally id*.  The United States declined to intervene.  *See* Dkt. #27.  The parties dispute whether Barnes properly notified New York State of the lawsuit.  *See* Dkt. #97-1 ¶ 1.  Barnes filed a second motion to amend her complaint on May 10, 2021.  Dkt. #84.  In her supporting papers, Dkt. #91, Barnes' attorney submitted a declaration stating that Barnes properly served the New York State Attorney General's Office with the required materials, and that New York State failed to either intervene in the action within the required deadline or seek an extension of the deadline.  Dkt. #91-1 ¶¶ 7-13.  Accordingly, with both the United States and New York State failing to intervene, Barnes proceeded as a *qui tam* relator.

HealthNow filed the instant summary judgment motion on May 25, 2021.  Dkt. #86.  Barnes filed her opposition on July 16, 2021.  Dkt. #97.  HealthNow filed its reply on August 27, 2021.  Dkt. #99.  On November 4, 2021, HealthNow filed a motion for leave to supplement the record for its summary judgment motion, seeking to include Barnes' deposition testimony containing purportedly key admissions.  Dkt. #109. Barnes opposed this motion on November 18, 2021.  Dkt. #111.  HealthNow replied on November 24, 2021.

For the reasons set forth below, it is recommended that HealthNow's motion for leave to supplement the record be denied, and its motion for summary judgment be granted in part and denied in part.

## DISCUSSION AND ANALYSIS

### I.    Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party . . . ." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).  A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

## II.    Barnes' FCA Claims

It is recommended that HealthNow's summary judgment motion against Barnes' FCA claims be denied because there are issues of fact pertaining to the scope and content of the OPM Audits.  HealthNow argues that 1) the OPM Audits are substantially the same as Barnes' Audit, and therefore bar her claim under the "public disclosure bar," (Dkt. #86-18 at 6-8), and 2) the United States' actions in the wake of the OPM

Audits demonstrate that HealthNow's alleged misrepresentations were not material, (*id.* at 8, 9). However, neither of these assertions are indisputable based on the OPM Audits and other evidence submitted in HealthNow's motion.

HealthNow also seeks leave to supplement the record to further support their argument for summary judgment against the FCA Claims. Dkt. #109. It is recommended that the Court exercise its discretion to deny this motion considering Barnes' lack of opportunity to partake in discovery. Alternatively, if the motion is granted, it would fail to resolve any existing material issues of fact.

### a. Public Disclosure Bar[2]

The public disclosure bar "provides that [a] district court 'shall dismiss an action or claim . . . if substantially the same allegations or transactions as alleged in the action

---

[2] Barnes asserts that this Court should not reach the merits of HealthNow's public disclosure bar argument because HealthNow is judicially estopped from arguing this position. *See* Dkt. #97 at 4. Specifically, Barnes claims that HealthNow cannot argue that the overcharges alleged in the Barnes Audit were publicly disclosed in the 2011 OPM Audit when it previously argued in its motion to dismiss that it did not discover the alleged overpayments until 2013, and therefore lacked scienter. *See id.* (referencing argument in Dkt. #45-21 at 12-14). However, HealthNow never benefitted from this purportedly inconsistent position. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (judicial estoppel requires attempt to benefit from inconsistent positions). When deciding HealthNow's motion to dismiss, Judge Sinatra clearly found that "[s]cienter is alleged" for the reverse FCA counts that survived 12(b)(6) dismissal based on the allegations that "the defendant refus[ed] to investigate the possibility that it was overpaid, and separately by taking no action to correct for overpayments." Dkt. #72 at 7, 9. Accordingly, Judge Sinatra never relied on HealthNow's purported failure to discover the overpayments, and in fact expressly stated that HealthNow's alleged failure to investigate or correct the overpayments established scienter (for the purposes of a motion to dismiss). HealthNow therefore never benefited from a previous argument inconsistent with their current argument that the OPM Audits publicly disclosed Barnes' alleged overpayments back in 2011.

or claim were publicly disclosed,' unless the relator is an 'original source of the information.'"  *United States ex rel. CKD Project, LLC v. Fresenius Med. Care Holdings, Inc.*, No. 21-2117, 2022 WL 17818587, at *2 (2d Cir. Dec. 20, 2022) (summary order) (quoting 31 U.S.C. § 3730(e)(4)(A)).  This requires "a two-step inquiry.  First, 'courts look to whether the substance of a relator's claim had been disclosed prior to the filing of his suit'; second, 'courts look to whether, if such disclosures had been made, the relator can be considered an "original source."'"  *Id*. (quoting *United States ex rel. Patriarca v. Siemens Healthcare Diagnostics, Inc*., 295 F. Supp. 3d 186, 196 (E.D.N.Y. 2018)).  Issues of fact preclude both steps of this inquiry.

### i.  Substantial Similarity

A relator's allegations are substantially similar to the public disclosures when "the public disclosures exposed all the essential elements of the alleged fraud."  *United States ex rel. Vierczhalek v. Medimmune, Inc.*, 345 F. Supp. 3d 456, 462 (S.D.N.Y. 2018) (quotations omitted).  This exposure must at lease "set the government squarely upon the trail of the alleged fraud."  *Chen v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 298 (S.D.N.Y. 2013) (quoting *Nat. Gas Royalties Qui Tam Litig. v. Pac. Gas & Elec. Co.*, 562 F.3d 1032, 1041 (10th Cir. 2009)).

Here, issues of fact regarding what "elements of fraud" the OPM Audits actually "exposed" preclude summary judgment.  *Id*.  First, the documents relating to the OPM Audits that HealthNow has submitted fail to provide sufficient detail regarding the scope of the OPM Audits to determine if they encompassed Barnes' claims.  The 2011 Audit

Report states that "[t]he objective of [the] audit was to determine whether BCBS plans properly charged the FEHBP for claims where the amounts paid exceeded covered charges."  Dkt. #86-5 at 7.  The 2011 Audit was limited in scope to "all facility claims that were reimbursed . . . where the amounts paid exceeded covered charges by $9,500 or more."  *Id*. at 3.  It "did not consider each BCBS plan's internal control structure," and consisted of "substantive tests of transactions and not tests of controls."  *Id*. at 7.  The 2011 Audit Report does not define the difference between testing "transactions" versus "controls," but relevant here, ultimately found that "[t]he BCBS plans paid 54 claims using the incorrect pricing allowances or methodologies, resulting in net overcharges . . . . These errors were due to the plans . . . not applying the lesser of billed charges," among other reasons.  *Id*. at 10.  It also suggested that, "[t]o reduce these types of claim errors in the future, the BCBS will . . . [m]odify [p]lans' pre-payment quality review processes . . . , with an emphasis on the impact of coding accuracy in the payment process."  *Id*. at 11.[3]


   The parties dispute whether the OPM Audits covered the same kind of erroneous payments alleged in the third amended complaint.  HealthNow argues that the

---

[3] HealthNow only references the 2011 Audit Report in its argument that the OPM Audits covered the same overpayments as the Barnes Audit.  *See* Dkt. #99 at 2.  This Court nonetheless conducted its own review of the 2013 Audit Report to see if it provided any help disambiguating the terms used in the 2011 OPM Audit Report, and found nothing. *See generally* Dkt. #86-6 (using the same "amounts paid exceeded covered charges" language without disambiguating these terms).  While the 2013 Audit Report stated that BCBS claims "the main reasons for the overpayments were caused by Processor Coding Errors," *id*. at 13, nothing in the 2013 Audit Report actually endorses BCBS's diagnosis or indicates it applies to the 2011 Audit Report.   The 2013 Audit Report also post-dates the Barnes Audit as well, so it cannot stand as its own source for a public disclosure bar argument.

"overcharges" covered by the audits encompass the "overpayments" referenced in the third amended complaint.  Dkt. #86-18 at 8.  Barnes argues that the audits covered overcharges where the amount paid out to a provider exceeded the maximum amount allowed by contract, whereas the third amended complaint is based on overpayments where maximum amount allowed by contract was paid even though the bill was for a lesser amount.  Dkt. #97 at 9-11.  HealthNow points to the 2011 Audit Report's statement that some of the "errors were due to the plans . . . not applying the lesser of billed charges" as evidence that Barnes' distinction is incorrect.  Dkt. #99 at 2.  It also submits two affidavits contradicting Barnes' characterization of the OPM Audits' definition of "overcharge."  *See* Dkt. #99-4; Dkt. #99-8.

This Court finds that the audit materials lack sufficient detail to show, indisputably, that the OPM Audits encompassed the types of overpayments alleged in the third amended complaint.  The audit materials HealthNow has submitted do not define "overcharges," making it impossible to determine from the submitted audit materials themselves whether the OPM Audits addressed instances where the contractual maximum was paid to a provider despite a lesser amount actually being incurred.  While the 2011 Audit Report does reference "errors . . . due to the plans . . . not applying the lesser of billed charges," and the "impact of coding accuracy in the payment process," Dkt. #86-5 at 10, 11, these two references are insufficient to indisputably outline the scope of the OPM Audits and the extent of their findings regarding Barnes' specific type of alleged overpayments.  While HealthNow submits two affidavits defining the OPM Audits' definition of overcharge in their favor, *see* Dkt. #99-

4; Dkt. #99-8, it would be improper at this stage of the proceedings, when Barnes has

appeared to conduct no discovery of her own to contradict these affidavits, to grant

summary judgment on these facts alone.


Furthermore, HealthNow has not even attempted to argue that the OPM Audits

revealed any information regarding the fraudulent nature of any of the alleged

overpayments.  As stated above, a purported public disclosure must "expose[] all the

essential elements of the alleged fraud."  *Vierczhalek*, 345 F. Supp. 3d at 462.

Accordingly, a public disclosure is not substantially similar to a plaintiff's claims if the

public disclosure failed to outline *fraudulent* conduct.  *See United States v. Dialysis

Clinic, Inc.*, No. 5:09-CV-00710 (NAM/DEP), 2011 WL 167246, at *8 (N.D.N.Y. Jan. 19,

2011) (finding no substantial similarity between complaint and preexisting Office of the

Medicaid Inspector General audit report, because "importantly, the Audit Report does

not suggest, infer or accuse defendants of fraud or any fraudulent conduct.  At best, the

Audit Report reveals errors and irregularities in defendant's billing practices.  It does not

accuse defendant of intentionally or fraudulently creating the discrepancies."); *see also

United States ex rel. Kester v. Novartis Pharm. Corp.*, 43 F. Supp. 3d 332, 356

(S.D.N.Y. 2014) (denying motion to dismiss where "the record [did not] reveal any other

public disclosures accusing these defendants of fraudulent conduct that was

'substantially similar' to the allegations in the Relator's Complaint.").


Here, the 2011 Audit Report expressly states that, "to the extent that errors did

occur, the payments [were] *good faith erroneous benefit payments* within the context of

[the contract]."  Dkt. #86-5 at 11 (emphasis added).  The 2013 Audit Report states the same thing.  Dkt. #86-6 at 13.  Accordingly, there is no evidence on the record indicating that the OPM Audits "suggest[ed], infer[ed] or accuse[d]" HealthNow of "intentionally or fraudulently creating the discrepancies" in payments, which is an essential element of Barnes' claims.  *Dialysis Clinic*, 2011 WL 167246, at *8.  Summary Judgment is therefore not warranted.

### ii.  Original Source

Furthermore, even if Barnes' claims are substantially similar to the overcharges set out in the OPM Audits, there is also a reasonable dispute as to whether Barnes is an original source.  As stated above, information that is substantially similar to publicly disclosed information can still be excused from the public disclosure bar if the plaintiff is an original source of that information.  *CKD Project, LLC*, 2022 WL 17818587, at *2.  "The False Claims Act provides that an 'original source' is one who 'has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions.'"  *Id*. at *8 (quoting 31 U.S.C. § 3730(e)(4)(A)).

It is impossible to determine from the record whether Barnes' claims are independent of and materially added to the OPM Audits, since it is unclear what exactly those audits revealed.  *See supra* Section II(a)(i).  Furthermore, even if the aforementioned ambiguities were resolved in favor of HealthNow, and this Court was able to determine that the OPM Audits encompassed the exact type of overpayments Barnes alleges here, there is the additional issue of fact regarding what portion of the

OPM Audits' overpayments overlap with Barnes' claims.  The 2011 Audit Report references "errors . . . due to the plans . . . not applying the lesser of billed charges" as one of several causes of the discovered overpayments.  Dkt. #86-5 at 10.  There is no way to determine from the record if the amount alleged by Barnes "materially adds" to this amount.  31 U.S.C. § 3730(e)(4)(A).

In sum, under either portion of the two-step public disclosure bar analysis, summary judgment is not warranted here.  *CKD Project, LLC*, 2022 WL 17818587, at *2.

### b.  Materiality

Summary judgment is also not warranted based on the purported immateriality of the alleged overpayments.  HealthNow argues that the allegedly fraudulent medical service bills were not material misrepresentations to the government, since the government treated the overpayments as mere contractual breaches in the OPM Audits, as opposed to fraud.  Dkt. #86-18 at 8 (citing *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016)).

"[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act."  *Escobar*, 579 U.S. at 192.  When determining the materiality of a misrepresentation, courts look to the "effect on the likely or actual behavior" of the government.  *Id*. at 193.

Here, as stated above, there are issues of fact as to what exactly the OPM Audits revealed, including whether they revealed the type of overcharges in Barnes' claims and whether they revealed any fraudulent conduct.  *See supra* Section II(a).  Accordingly, since it is unclear what exact findings the United States "reacted" to when it issued the OPM Audits, this reaction cannot provide indisputable evidence that the alleged overcharges were immaterial.  Because HealthNow offers no further evidence of immateriality besides the purported "actual behavior" of the United States in reaction to the overpayments revealed by the OPM Audits, summary judgment is not warranted on materiality grounds.  *Escobar*, 579 U.S. at 192.

### c.  HealthNow's Motion for Leave to Supplement

HealthNow seeks to supplement the record to further support the aforementioned arguments for summary judgment against the FCA Claims.  Dkt. #109.  Specifically, it proposes supplementing the record with Barnes' deposition testimony that was taken after the summary judgment motion briefing, arguing that the testimony: 1) admits the OPM Audits "utilized the same standard of review" as Barnes' Audit, 2) demonstrates that Barnes had little understanding of the FEP system and cannot testify to the facts relating to it in her affidavit, and 3) admits HealthNow had no direct relationship with the federal government.  Dkt. #109-3 at 2, 3.  It is recommended that HealthNow's motion for leave to supplement be denied because Barnes has not had an adequate opportunity to discover evidence in opposition.

A district court has the discretion to allow supplementary evidence into the record when considering a summary judgment motion.  Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact."); *Nick's Garage, Inc. v. Progressive Cas. Ins. Co*., 875 F.3d 107, 116 n.4 (2d Cir. 2017) ("[A] district court is not compelled to dismiss or deny an inadequately supported motion for summary judgment.  The court has numerous alternative available options.  Among them, it may give the moving defendant time to make additional submissions that would cure the deficiency in its papers by citing to evidence that shows its entitlement to judgment *(with a reasonable opportunity to the plaintiff to respond)*.") (emphasis added).

Here, Barnes has not been given an adequate opportunity to respond to the additional evidence generated at her deposition.  "The Second Circuit has emphasized that it is '[o]nly in the rarest of cases' that summary judgment may be entered against a party who has not been afforded the opportunity to conduct discovery."  *Byrd v. Grove St. Mgmt. Corp*., No. 6:16-CV-6017(MAT), 2016 WL 6663006, at *2 (W.D.N.Y. Nov. 11, 2016) (quoting *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)); *Sutera v. Schering Corp*., 73 F.3d 13, 18 (2d Cir. 1995) (reversing grant of summary judgment where "it [could not] be said that plaintiff had a full and fair opportunity to show that [defendant's] articulated reason for his dismissal was pretextual").  Here, not only did HealthNow initially seek summary judgment before Barnes had an opportunity to benefit from discovery, but now it seeks to itself benefit

from discovery without giving Barnes a chance to do the same. Accordingly, the Court should exercise its discretion to deny HealthNow's motion to supplement the record.

Furthermore, even if the Court considered HealthNow's supplemental material, it would not cure its summary judgment motion's deficiencies. Barnes' supposed admission that the OPM Audits "utilized the same standard of review" as her audit, Dkt. #109-3 at 3, cannot be indisputably established from the given deposition testimony. Barnes' statement that the OPM Audits addressed variances between the "allowed amount" and the "provider's charges," *id.* at 5, does not mean that the OPM Audits specifically addressed instances where HealthNow failed to pay the lesser amount of the covered versus actual provider charge. The OPM Audits could have only addressed "variances" where the provider charge *exceeded* the covered amount, as explained in Barnes' summary judgment opposition papers. *See* Dkt. #97 at 9. Furthermore, Barnes' opinion on the scope of the OPM Audits' targeted overcharges has no bearing on their failure to address any fraudulent elements of the overcharges.

Next, Barnes' supposed admission that she is not qualified to state facts regarding the FEP programs has no bearing on the ambiguity of the OPM Audits. HealthNow relies on Barnes stating that she based her opinion regarding the OPM Audits' scope on the 2011 Audit Report, not personal knowledge. Dkt. #109-3 at 6. However, as stated above, a reading of the 2011 Audit Report does not establish beyond reasonable dispute what the exact scope of the OPM Audits was. Accordingly,

this admission by Barnes, and her apparent lack of understanding of the FEP programs, does not somehow disambiguate the 2011 Audit Report.

Lastly, Barnes' lack of personal knowledge regarding HealthNow's dealings with the federal government does not entitle HealthNow to summary judgment.  Barnes may rely on potential future discovered material from HealthNow to adequately establish this element of her claim.  *See United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 86 (2d Cir. 2017) (the Second Circuit does not "require that every *qui tam* complaint allege on personal knowledge specific identified false invoices submitted to the government.  As set forth above, a complaint can satisfy Rule 9(b)'s particularity requirement by making plausible allegations creating a strong inference that specific false claims were submitted to the government and that the information that would permit further identification of those claims is peculiarly within the opposing party's knowledge.").

Accordingly, even if allowed into the record, the supplemental deposition testimony would fail to eliminate the aforementioned material disputes of fact.

### III.    Barnes' NYSFCA Claims

It is recommended that HealthNow's summary judgment motion against Barnes' NYSFCA claims be granted insofar as the claims are based on damages to local government entities, and denied in all remaining respects.  HealthNow argues that it is entitled to summary judgment on Barnes' NYSFCA claims because Barnes never

properly notified New York State of her claims.  Dkt. #86-18 at 12.  HealthNow also

argues that summary judgment is warranted to the extent Barnes asserts claims on

behalf of, or to recover damages related to, unidentified local governments.  *Id.*

First, any deficiency in Barnes' service of New York State has been remedied.

Barnes set forth in her second motion to amend her complaint that New York State was

adequately served under the relevant procedural rules.  Dkt. #91-1 ¶¶ 7-13.  HealthNow

concedes that this evidence defeats the argument for summary judgment set out in their

initial motion papers.  Dkt. #99 at 9 (stating that "Relator filed previously undisclosed

evidence of process service on the State of New York in her motion to amend her

complaint," and failing to controvert the sufficiency of this evidence).

HealthNow has since asserted new arguments relating to the sufficiency of

Barnes' compliance with the N.Y. State Fin. Law § 190 notice requirements.  *See id.*

Specifically, they argue that Barnes has not demonstrated that she served New York

State with a copy of the documents she has filed with this Court.  *Id.* (citing N.Y. State

Fin. Law § 190(f)).  However, "[a] district court is free to disregard argument[s] raised for

the first time in reply papers, especially on a motion for summary judgment."  *Byrd v.*

*NYS Fingerlakes Developmental Disabilities Servs. O.P.W.D.D.*, No. 6:14-CV-

06470(MAT), 2018 WL 3305423, at *2 (W.D.N.Y. July 5, 2018) (quoting *Am. Hotel Int'l*

*Grp. Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009)).  Barnes

has not been given an opportunity to submit evidence of her compliance with N.Y. State

Fin. Law § 190(f).  Accordingly, summary judgment would be inappropriate at this stage

of the proceedings based on Barnes' absence of evidence indicating she has supplied

New York State with a copy of every filing in this case.

HealthNow also argues that Barnes has not asserted any facts relating to local

governments in her third amended complaint.  Dkt. #86-18 at 12.  Therefore, to the

extent her claims seek recovery for damages on any local government's behalf,

summary judgment should be granted.  *Id*.[4]  "[A]lthough *qui tam* actions allow individual

citizens to initiate enforcement against wrongdoers who cause injury to the public at

large, the Government remains the real party in interest in any such action."  *New York*

*ex rel. Am. Advisory Servs., LLC v. Egon Zehnder Int'l, Inc.*, No. 21-CV-6883 (LJL),

2022 WL 2758023, at *3 (S.D.N.Y. July 14, 2022) (quoting *Minotti v. Lensink*, 895 F.2d

100, 104 (2d Cir. 1990)).  Accordingly, "[t]he relator - rather than suing because he or

she has personally suffered – 'invokes the standing of the government resulting from

the fraud injury,' and 'stands in the shoes of the government, which is the real party in

interest.'"  *United States ex rel. Mohajer*, 525 F. Supp. 3d 447, 452 (S.D.N.Y. 2021)

(quoting *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d

1148, 1154 (2d Cir. 1993)).

---

[4] HealthNow already raised this argument in its motion to dismiss papers.  Dkt. #45-21
at 19.  There, it argued that "the Ninth Cause of Action," now the Fourth Cause of Action
in the third amended complaint, "alleges overpayments that affected 'many municipal'
plans, but those plans are not parties to this case."  *Id*.  Judge Sinatra granted in part
and denied in part HealthNow's motion to dismiss the formerly Ninth Cause of Action,
now the Fourth, on grounds unrelated to whether any local governments needed to be
added as parties to the case.  *See* Dkt. #72 at 10, 11.  Judge Sinatra also specifically
stated that he could "look more closely at [any] issue at the summary judgment stage . .
. for all the claims that survive[d] [the] motion to dismiss."  *Id*.  Accordingly, the Court will
address these arguments in detail here.

Here, Barnes purports to bring her Fourth Cause of Action for NYSFCA violations on behalf of "local governments/municipalities."  Dkt. #94 ¶ 132.  Barnes also specifically alleges that "the overcharges were born completely by the school district or municipality and its members/policyholders.  Alleghany Cattaragus Schools, Orchard Park Schools, and the Schenectady Central School District are just a few of the ASO plans directly harmed by Defendant's conduct."  *Id*. ¶ 19.  Because these local government entities, and any additional local government entities identified through further discovery, are "the real part[ies] in interest" here, *Minotti*, 895 F.2d at 104, any claims on their behalf require that they be added as a party to the action.

However, while the deadline to add additional parties has passed, Barnes is still free to seek leave to add any local government entities revealed through discovery at a later date, subject to the relevant standard for adding parties after the deadline.  *See Pritchard v. Cnty. of Erie*, No. 04CV534C, 2005 WL 8173546, at *12 (W.D.N.Y. Sept. 26, 2005) (discussing the "showing of good cause [required] to justify an untimely amendment or motion for leave to add parties under Rule 16(b)").  Accordingly, while summary judgment is granted against any claims on behalf of unnamed "local governments/municipalities" under Barnes' Fourth Cause of Action, these claims are dismissed without prejudice.  Barnes may seek to add these local government entities or amend her complaint at a later time, if she is able to meet the relevant standard.

**CONCLUSION**

For the foregoing reasons, it is recommended that HealthNow's motion for leave to supplement (Dkt. #109) be DENIED, and its motion for summary judgment motion (Dkt. #86) be GRANTED in part and DENIED in part.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
             **March 21, 2023**

                                        *_s/ H. Kenneth Schroeder, Jr._*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**