UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MADELYN B. BARNES, by and on behalf of the United States of America, and by and on behalf of the State of New York,

Plaintiff,

v.

HEALTHNOW NEW YORK INC., etc.,

Defendant.

Case No. 16-cv-00088-JLS-HKS

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION**

Respectfully submitted,

PHILLIPS LYTLE LLP
Attorneys for Defendant
*HealthNow New York Inc., now known as Highmark Western and Northeastern New York Inc., etc.*
One Canalside
125 Main Street
Buffalo, New York 14203-2887
Telephone No. (716) 847-8400

Alan J. Bozer
William P. Keefer
Lisa L. Smith
Joshua Glasgow
Sam M. Williams
– Of Counsel –

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 3

A. Legal Background ..... 3

1. The Constitution requires that significant executive authority be exercised by properly appointed Officers ..... 3

2. The FCA permits relators to litigate on behalf of the United States ..... 4

B. HealthNow seeks dismissal after recognition of constitutional issues ..... 6

C. The Report does not provide an independent analysis of the issues ..... 7

ARGUMENT ..... 9

POINT I THE REPORT DOES NOT INCLUDE AN INDEPENDENT ANALYSIS OF WHETHER RELATORS EXERCISE SIGNIFICANT AUTHORITY ..... 9

A. The authority to litigate on behalf of the United States is significant ..... 9

B. Relators exercise significant authority by litigating on behalf of the United States ..... 12

POINT II THE REPORT DID NOT APPLY THE *DONZIGER* FACTORS ..... 14

A. Realtors do not hold a personal position ..... 14

B. A relator's position is not transient or fleeting ..... 16

C. The duties of a relator are more than incidental ..... 17

POINT III THE REPORT DOES NOT CONSIDER HEALTHNOW'S ARGUMENTS SHOWING THAT OUT-OF-CIRCUIT CASES ARE NOT PERSUASIVE ..... 18

POINT IV THE COUNTERARGUMENTS SUBMITTED BY BARNES AND THE GOVERNMENT LACK MERIT ..... 20

A. A history of unconstitutional practice cannot rescue the FCA ..........20

B. Barnes and the government rely on inapposite cases ..........22

POINT V THE REPORT ERRED IN SUMMARILY REJECTING HEALTHNOW'S ARGUMENTS UNDER THE VESTING AND TAKE CARE CLAUSES ..........24

POINT VI THIS MOTION IS TIMELY AND JUSTIFIES AMENDING THE ANSWER ..........25

CONCLUSION ..........25

## TABLE OF AUTHORITIES

Page

**Cases**

*Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.*,
821 F.3d 19 (D.C. Cir. 2016) ....16

*Atlantic States Legal Found., Inc. v. Buffalo Envelope, Div. of Am. Envelope Co.*,
823 F. Supp. 1065 (W.D.N.Y. 1993)....23

*Auffmordt v. Hedden*,
137 U.S. 310 (1890)....22

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993) ....25

*Buckley v. Valeo*,
424 U.S. 1 (1976) ....*passim*

*Buffalo Cent. Terminal v. United States*,
886 F. Supp. 1031 (W.D.N.Y. 1995).... 9

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*,
587 U.S. 262 (2019)....23

*Conn. Action Now, Inc. v. Roberts Plating Co.*,
457 F.2d 81 (2d Cir. 1972)....22

*Edmond v. United States*,
520 U.S. 651 (1997)....4, 13

*Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC*,
590 U.S. 448 (2020)....4, 18

*Freytag v. Comm'r*,
501 U.S. 868 (1991)....3, 12

*Grassia v. Scully*,
892 F.2d 16 (2d Cir. 1989).... 9

*In re Hulley Enters. Ltd.*,
400 F. Supp. 3d 62 (S.D.N.Y. 2019) .... 9

*Humphrey's Executor v. United States*,
295 U.S. 602 (1935)....24

*Lucia v. SEC*,
585 U.S. 237 (2018)....................3, 18

*Marsh v. Chambers*,
463 U.S. 783 (1983)....................20

*Morrison v. Olson*,
487 U.S. 654 (1988)....................3, 10, 11, 16, 17

*Myers v. United States*,
272 U.S. 52 (1926)....................4, 24

*N.L.R.B. v. Noel Canning*,
573 U.S. 513 (2014)....................20

*Nelson v. Smith*,
618 F. Supp. 1186 (S.D.N.Y. 1985)....................9

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*,
51 F. Supp. 2d 457 (S.D.N.Y. 1999)....................9

*In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*,
974 F.3d 228 (3d Cir. 2020)....................15

*Riley v. St. Luke's Episcopal Hosp.*,
252 F.3d 749 (5th Cir. 2001)....................18

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020)....................*passim*

*Sibley v. Watches*,
460 F. Supp. 3d 302 (W.D.N.Y. 2020)....................13

*Town of Greece v. Galloway*,
572 U.S. 565 (2014)....................20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................11

*U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*,
603 F. Supp. 2d 677 (S.D.N.Y. 2009)....................15

*United States ex rel. Adams v. Chattanooga Hamilton Cnty. Hosp. Auth.*,
2024 WL 4784372 (E.D. Tenn. Nov. 7, 2024)....................19

*United States ex rel. Angelo v. Allstate Ins. Co.*,
620 F. Supp. 3d 674 (E.D. Mich. 2022)....................15

*United States ex rel. Blyn v. Triumph Grp., Inc.*,
2016 WL 1664904 (D. Utah Apr. 26, 2016)....................15

*United States ex rel. Bryant v. Cmty. Health Sys., Inc.*,
24 F.4th 1024 (6th Cir. 2022)....................15

*United States ex rel. Butler v. Shikara*,
748 F. Supp. 3d 1277 (S.D. Fla. 2024)....................19

*United States ex rel. CLJ, LLC v. Halickman*,
2024 WL 3332055 (S.D. Fla. June 14, 2024)....................19

*United States ex rel. Gonite v. UnitedHealthcare of Georgia, Inc.*,
2025 WL 1184109 (M.D. Ga. April 23, 2025)....................8, 16, 19

*United States ex rel. Kelly v. Boeing Co.*,
9 F.3d 743 (9th Cir. 1993)....................8, 18

*United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*,
985 F.2d 1148 (2d Cir. 1993)....................23

*United States ex rel. Mergent Servs. v. Flaherty*,
540 F.3d 89 (2d Cir. 2008)....................12

*United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*,
133 F.4th 395 (5th Cir. 2025) (Duncan, J., concurring)....................7

*United States ex rel. Penelow v. Janssen Prods., LP*,
2025 WL 937504 (D.N. J. Mar. 28, 2025), *appeal docketed*, No. 25-1818 (3d Cir. April 29, 2025)....................19

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
599 U.S. 419 (2023) (Thomas, J., dissenting)....................*passim*

*United States ex rel. Precision Co. v. Koch Indus., Inc.*,
31 F.3d 1015 (10th Cir. 1994)....................15

*United States ex rel. Ross v. Indep. Health Corp.*,
2021 WL 3492917 (W.D.N.Y. Aug. 9, 2021)....................13

*United States ex rel. Spicer v. Westbrook*,
751 F.3d 354 (5th Cir. 2014)....................15

*United States ex rel. Stone v. Rockwell Int'l Corp.*,
282 F.3d 787 (10th Cir. 2002)....................18

*United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*,
41 F.3d 1032 (6th Cir. 1994)....................18

*United States ex rel. Thomas v. Care*,
2023 WL 7413669 (D. Ariz. Nov. 9, 2023)....................................................19

*United States ex rel. Zafirov v. Florida Medical Associates, LLC*,
751 F. Supp. 3d 1293 (M.D. Fla. Sept. 30, 2024), *appeal docketed* Nos. 24-13581 & 24-13583 (11th Cir. Oct. 30, 2024) .................................... 7, 12, 14

*United States v. Donziger*,
38 F.4th 290 (2d Cir. 2022)....................................................*passim*

*United States v. Germaine*,
99 U.S. 508 (1879) ....................................................10, 22

*United States v. Griswold*,
26 F. Cas. 42 (D. Or. 1877) ....................................................22

*United States v. Halper*,
490 U.S. 435 (1989), *overruled on other grounds by Hudson v. United States*, 522 U.S. 93 (1997) .................................................... 6

*United States v. Hartwell*,
73 U.S. 385 (1867) ....................................................19

*United States v. Maurice*,
26 F. Cas. 1211 (C.C.D. Va. 1823)....................................................15, 19

*United States v. NEC Corp.*,
11 F.3d 136 (11th Cir. 1993), *as amended* (Jan. 12, 1994)....................................................15

*United States v. Nixon*,
418 U.S. 683 (1974)....................................................11

*United States v. Sealed Defendant One*,
49 F.4th 690 (2d Cir. 2022)....................................................23

*United States v. SouthEast Eye Specialists, PLLC*,
2021 WL 790889 (M.D. Tenn. Feb. 24, 2021)....................................................13

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*,
529 U.S. 765 (2000)....................................................6, 11, 17, 21, 23, 24

*Vidal v. Elster*,
602 U.S. 286 (2024) (Barrett, J., concurring) ....................................................20

*Williams v. Beemiller, Inc.*,
527 F.3d 259 (2d Cir. 2008) .................................................... 9

*Wis. Bell, Inc. v. United States ex rel. Heath*,
145 S. Ct. 498 (2025) (Kavanaugh, J., concurring) ..... 7

**Statutes**

31 U.S.C. § 3729(a) ..... 6

31 U.S.C. § 3730(b) ..... 4, 13, 14, 15

31 U.S.C. § 3730(c) ..... 5, 13, 14, 24

Act of Feb. 20, 1792, ch. 7, §§ 16, 25, 1 Stat. 232 ..... 21

Act of July 31, 1789, ch. 5, § 29, 1 Stat. 44 ..... 21

Act of Mar. 1, 1793, ch. 19, §§ 7, 12, 1 Stat. 329 ..... 21

Act of May 31, 1790, ch. 15, § 2, 1 Stat. 124 ..... 21

**Other Authorities**

James T. Blanch, *The Constitutionality of the False Claims Act's Qui Tam Provision*, 16 Harv. J.L. & Pub. Pol'y 701, 707 (1993) ..... 5

28 C.F.R. § 85.5(a), (d) ..... 6

Evan Caminker, *The Constitutionality of Qui Tam Actions*, 99 Yale L.J. 341, 342 (1989) ..... 21

*Constitutionality of the Qui Tam Provisions of the False Claims Act*, 13 Op. O.L.C. 207 (1989) ..... *passim*

Fed. R. Civ. P. 12(c) ..... 25

Fed. R. Civ. P. 24 ..... 15

Steve France, *The Private War on Pentagon Fraud*, 76 A.B.A.J. 46, 48 (1990) ..... 6

James A. Heilpern, *Temporary Officers*, 26 Geo. Mason L. Rev. 753, 771 (2019) ..... 15

Harold J. Krent, *Executive Control over Criminal Law Enforcement: Some Lessons from History*, 38 Am. U.L. Rev. 275, 296-99 (1989) ..... 21

14 James Wm. Moore Et Al., Moore's Federal Practice § 72.11[2][a] (3d ed. 1997) ..... 9

*Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73 (2007) ..... 19

Saikrishna Prakash, *The Chief Prosecutor*, 73 Geo. Wash. L. Rev. 521, 589 (2005) ....21

Michael Rich, *Prosecutorial Indiscretion: Encouraging the Department of Justice to Rein in Out-of-Control Qui Tam Litigation Under the Civil False Claims Act*, 76 U. Cin. L. Rev. 1233, 1263 (2008) .... 4

U.S. Dep't of Just., Fiscal Year 2024 False Claims Act Statistics 2 (Jan. 15, 2025), https://www.justice.gov/opa/media/1384546/dl .... 6

U.S. Const. art. I, § 3, cl. 7 ....19

U.S. Const. art. II, § 1, cl. 1 .... 2, 4, 24

U.S. Const. art. II, § 2, cl. 2 ....1, 3, 13, 23

U.S. Const. art. II, § 3 ....*passim*

**PRELIMINARY STATEMENT**

Defendant HealthNow New York Inc., d/b/a BlueCross BlueShield of Western New York, and d/b/a BlueShield of Northeastern New York, now known as Highmark Western and Northeastern New York Inc. ("HealthNow"), submits this Memorandum of Law in Support of its Objections to the Report and Recommendation (the "Report").

HealthNow's motion for judgment on the pleadings raises a critically important issue: whether the *qui tam* provisions of the False Claims Act ("FCA") violate Article II of the Constitution. Three Supreme Court Justices recently explained that this is a serious question warranting the high Court's attention. *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 449 (2023) (Thomas, J., dissenting); *id.* (Kavanaugh, J., joined by Barrett, J., concurring). Since then, the issue has divided both Circuit and District Judges. Unfortunately, the Report does not include an independent analysis of this question. Instead, it simply notes that earlier cases rejected the argument and concludes it "need only briefly review the reasoning for these holdings." (Dkt. 187 at 10). It now falls to this Court to undertake a fulsome examination of this substantial constitutional issue.

The primary issue is whether FCA relators qualify as "Officers" under the Appointments Clause. U.S. Const. art. II, § 2, cl. 2. An officer is one who exercises significant authority and occupies a continuing position. Yet the Report does not directly address the first prong of this test. Nor does it apply binding Second Circuit precedent on the second prong. As shown below, relators satisfy both elements. They are officers who have not been validly appointed. The FCA's *qui tam* provisions are thus unconstitutional.

With respect to substantial authority, the Supreme Court has unambiguously held that the "primary responsibility for conducting civil litigation in the courts of the United

States for vindicating public rights . . . may be discharged only by persons who are 'Officers of the United States.'" *Buckley v. Valeo*, 424 U.S. 1, 140 (1976). That is precisely what relators do. They "sue on the Government's behalf . . . to vindicate the Government's interests." *Polansky*, 599 U.S. at 423, 435. By seeking damages that are essentially punitive in nature on behalf of the United States, relators exercise substantial executive authority.

As to the continuing position prong, the Second Circuit has established a three-part test for determining whether a temporary position qualifies. *See United States v. Donziger*, 38 F.4th 290, 297 (2d Cir. 2022). The Report does not apply that test, instead burying *Donziger* in a footnote. (Dkt. 187, at 11 n.4). Yet relators meet all three elements: (1) the position of relator is not personal, but can continue beyond an individual's tenure; (2) the position is not transient or fleeting, but can continue for years; and (3) relators exercise more than incidental authority.

The Report erred in summarily dismissing HealthNow's Appointments Clause challenge. The earlier cases upon which it relies were issued long before the Supreme Court's more recent jurisprudence regarding Article II. Further, none of those decisions applied the rigorous analysis required by *Donziger*.

The Report also erred in rejecting HealthNow's arguments under the Vesting Clause, U.S. Const. art. II, § 1, cl. 1, and the Take Care Clause, U.S. Const. art. II, § 3. Self-appointed relators, who cannot be removed by the President, impinge the core executive function of litigating on behalf of the United States. Finally, the Report erred in denying HealthNow leave to amend its answer. This Court should reject the Report and hold that the FCA's *qui tam* provisions are unconstitutional.

## BACKGROUND

### A. Legal Background

#### 1. The Constitution requires that significant executive authority be exercised by properly appointed Officers

The Appointments Clause states that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. "The Appointments Clause prescribes the exclusive means of appointing 'Officers.'" *Lucia v. SEC*, 585 U.S. 237, 244 (2018).

There are two requirements for a position to qualify as an office. First, an officer must "exerc[ise] significant authority pursuant to the laws of the United States." *Buckley*, 424 U.S. at 126. Second, an officer "must occupy a 'continuing' position established by law." *Lucia*, 585 U.S. at 245. This requirement has three subparts: "(1) the position is not personal to a particular individual; (2) the position is not transient or fleeting; and (3) the duties of the position are more than incidental." *Donziger*, 38 F.4th at 297.

The Appointments Clause serves twin purposes. In addition to preventing the "encroachment or aggrandizement of one branch at the expense of the other," *Morrison v. Olson*, 487 U.S. 654, 693 (1988), it "also preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power." *Freytag v. Comm'r*, 501 U.S. 868, 878 (1991). The Appointments Claus thus works "to ensure political accountability" by guaranteeing that the "'blame of a bad nomination would fall upon the

president singly and absolutely.'" *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC*, 590 U.S. 448, 457 (2020) (quoting *Edmond v. United States*, 520 U.S. 651, 660 (1997)).

Two other constitutional provisions work in tandem with the Appointments Clause toward these ends. First, the Vesting Clause directs that the "executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. The "entire 'executive Power' belongs to the President alone." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 213 (2020). Second, the Take Care Clause provides that the President "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. The President's "power of removing those for whom he cannot continue to be responsible" is "essential to the execution of the laws by him." *Myers v. United States*, 272 U.S. 52, 117 (1926). A contrary rule "'would make it impossible for the President . . . to take care that the laws be faithfully executed.'" *Seila*, 591 U.S. at 214 (quoting *Myers*, 272 U.S. at 164).

**2. The FCA permits relators to litigate on behalf of the United States**

The FCA permits a relator to "bring a civil action" on behalf of and "in the name of the Government." 31 U.S.C. § 3730(b)(1). The government then has 60 days to determine whether to "intervene and proceed with the action." 31 U.S.C. § 3730(b)(2). It does not intervene in the vast majority of cases. *See* Michael Rich, *Prosecutorial Indiscretion: Encouraging the Department of Justice to Rein in Out-of-Control Qui Tam Litigation Under the Civil False Claims Act*, 76 U. Cin. L. Rev. 1233, 1263 (2008). In those cases, the relator "shall have the right to conduct the action." 31 U.S.C. § 3730(b)(4)(B). When the government declines to intervene, it "is (by definition) not a party. And non-parties typically cannot do much of anything in a lawsuit." *Polansky*, 599 U.S. at 430. Once the original 60-day intervention period lapses, the government cannot intervene unless "it shows good cause."

*Id.* at 423; *see also* 31 U.S.C. § 3730(c)(3). Thus, in the bulk of *qui tam* cases, the relator takes the "lead role" as "the only person then pressing the suit." *Polansky*, 599 U.S. at 423.

In the smaller subset of cases in which the government does intervene, its control of the case is strictly limited. The government cannot dismiss a *qui tam* case on its own. *See* 31 U.S.C. § 3730(c)(2)(A). Instead, the "FCA requires notice and an opportunity for a hearing" at which the district court must consider the interests of relators. *Polansky*, 599 U.S. at 436. "[A]ll relators faced with a (2)(A) motion want their actions to go forward, and many have by then committed substantial resources." *Id.* at 437. The District Court decides whether to permit the government to dismiss a case, which requires some showing "the burdens of continued litigation outweigh its benefits." *Id.* at 438. Similarly, the government cannot settle a *qui tam* action over a relator's objections unless the District Court, after a hearing, determines that the "proposed settlement is fair, adequate, and reasonable under all the circumstances." 31 U.S.C. § 3730(c)(2)(B).

Further, even where the government chooses to intervene, a relator has the right to "unrestricted participation" in the litigation, including calling and cross-examining witnesses. 31 U.S.C. § 3730(c)(2)(C). The government can curtail a relator's participation in *qui* tam actions only by convincing the District Court that the relator's participation "would interfere with or unduly delay the Government's prosecution of the case, or would be repetitious, irrelevant, or for purposes of harassment" *Id.* The FCA's provisions "substantially curtail the complete discretion that the DOJ would have had if it had brought the action itself." James T. Blanch, *The Constitutionality of the False Claims Act's Qui Tam Provision*, 16 Harv. J.L. & Pub. Pol'y 701, 707 (1993).

The FCA's *qui tam* provisions were rarely used through most of our history. *See* Steve France, *The Private War on Pentagon Fraud*, 76 A.B.A.J. 46, 48 (1990) ("Before 1986, DOJ used to receive about six qui tam cases a year."). Following amendments to the statute in 1986, however, the number of actions filed by relators increased dramatically. *Qui tam* actions now vastly exceed the number of FCA cases filed by the government. Last year, for example, relators filed 979 FCA cases while the government filed fewer than half that number. U.S. Dep't of Just., Fiscal Year 2024 False Claims Act Statistics 2 (Jan. 15, 2025), https://www.justice.gov/opa/media/1384546/dl.

The statute provides for treble damages and statutory penalties of $27,894 per infraction. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.5(a), (d). Each "claim" is an independent infraction, and thus these penalties can far exceed actual damages. *See United States v. Halper*, 490 U.S. 435, 450-452 (1989), *overruled on other grounds by Hudson v. United States*, 522 U.S. 93 (1997). Accordingly, regardless of whether the government intervenes, a defendant faces damages that are "essentially punitive in nature" under the FCA. *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784 (2000).

**B. HealthNow seeks dismissal after recognition of constitutional issues**

Madelyn Barnes filed this suit on behalf of the United States nine years ago, in February 2016. (Dkt. 1). Following a lengthy investigation that resulted in no enforcement action, the government declined to intervene. (Dkt 27). Although discovery closed in November 2024, Barnes has repeatedly sought to extend that deadline. (Dkt. 148, 170).

In 2023, three Justices of the Supreme Court called into doubt the constitutionality of the FCA's *qui tam* provisions. In dissent, Justice Thomas highlighted the "substantial arguments that the *qui tam* device is inconsistent with Article II and that private relators may

not represent the interests of the United States in litigation." *Polansky*, 599 U.S. at 449 (Thomas, J., dissenting). A concurring opinion by Justice Kavanaugh, joined by Justice Barrett, agreed that there were "substantial arguments" regarding the Constitutionality of the *qui tam* provisions and that "the Court should consider the competing arguments on the Article II issue in an appropriate case." *Id.* (Kavanaugh, J., concurring). A few months ago, Justice Kavanaugh, joined by Justice Thomas, again noted that "in an appropriate case, the Court should consider the competing arguments on the Article II issue." *Wis. Bell, Inc. v. United States ex rel. Heath*, 145 S. Ct. 498, 515 (2025) (Kavanaugh, J., concurring).

Following Polansky, a district court held that that the FCA's *qui tam* provisions violate the Appointments Clause. In *United States ex rel. Zafirov v. Florida Medical Associates, LLC*, 751 F. Supp. 3d 1293 (M.D. Fla. Sept. 30, 2024), *appeal docketed* Nos. 24-13581 & 24-13583 (11th Cir. Oct. 30, 2024), the court held that FCA relators are "Officers of the United States." *Id.* at 1300. This "arrangement directly defies the Appointments Clause by permitting unaccountable, unsworn, private actors to exercise core executive power with substantial consequences to members of the public." *Id.* at 1324. Additionally, Judge Duncan of the Fifth Circuit recently authored a concurring opinion noting that, while bound by Circuit precedent, he was persuaded that the FCA's *qui tam* provisions violate the Appointments Clause. *See United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*, 133 F.4th 395, 410 (5th Cir. 2025) (Duncan, J., concurring).

**C. The Report does not provide an independent analysis of the issues**

HealthNow filed a motion for judgment on the pleadings challenging the constitutionality of the FCA's *qui tam* provisions, along with a notice of the constitutional challenge. (Dkt. 171, 178). Barnes and the government filed responses. (Dkt. 183, 184).

Issued just four days after briefing was complete, the Report recommends that the motion be denied. (Dkt. 187). It rejects Barnes' argument that the motion was untimely. (*Id.* at 7). On the merits, the Report does not provide an independent analysis. Instead, it notes that earlier cases held that FCA's *qui tam* provisions were permissible and thus it "need only briefly review the reasoning for these holdings." (*Id.* at 10). The Report does not address HealthNow's explanation of why those cases are unpersuasive. (*See* Dkt 171-2, at 18-20).

Rather than applying Second Circuit case law on whether a position qualifies as continuing for Appointments Clause purposes, the Report quotes an unpublished Middle District of Georgia decision to summarily conclude "[a] relator's duties 'are temporary and not continuous.'" (Dkt. 187, at 11 (quoting *United States ex rel. Gonite v. UnitedHealthcare of Georgia, Inc.*, 2025 WL 1184109, at *3 (M.D. Ga. April 23, 2025)). It is unclear whether the Report makes a recommendation as to whether a relator exercises significant authority under the Appointments Clause. Although the Report does not analyze that issue, it includes a parenthetical quotation stating that a relator does not "exercise authority 'so significant' that the Constitution only permits an officer of the United States to exercise it." (*Id.* at 11 (quoting *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 759 (9th Cir. 1993)).

The Report also includes a lengthy discussion of whether the FCA's *qui tam* provisions are permissible under Article III, an argument HealthNow expressly did not make. (*Id.* at 11-12; *see also* Dkt. 171-2, at 21 n.2). As to the Vesting and Take Care Clauses, the Report states that these challenges are "foreclosed" by the out-of-circuit cases it previously cited. (Dkt. 187, at 14). Finally, the Report concludes that HealthNow should not be permitted to amend its answer to raise these constitutional defenses based on futility. (*Id.* at 16). HealthNow timely filed Objections to the Report.

## ARGUMENT

This Court reviews the Report *de novo*. *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A "district court is not bound by the recommendation of the magistrate judge." *Buffalo Cent. Terminal v. United States*, 886 F. Supp. 1031, 1035 (W.D.N.Y. 1995). In light of "the possible constitutional implications of delegating Article III judges' duties to magistrate judges," *Williams v. Beemiller, Inc.*, 527 F.3d 259, 264 (2d Cir. 2008), the Court must "'arrive at its own, independent conclusion' regarding those portions of the report to which objections are made," *In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 69 (S.D.N.Y. 2019) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189-90 (S.D.N.Y. 1985)). Pursuant to this standard, "a district court must make a 'fresh consideration' of the magistrate judge's conclusions and apply 'no presumption of validity . . . to the magistrate's findings or recommendations.'" *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 466 (S.D.N.Y. 1999) (quoting 14 James Wm. Moore Et Al., Moore's Federal Practice § 72.11[2][a] at 72-44 (3d ed. 1997)).

## POINT I
## THE REPORT DOES NOT INCLUDE AN INDEPENDENT ANALYSIS OF WHETHER RELATORS EXERCISE SIGNIFICANT AUTHORITY

The Report does not include an in-depth analysis of the constitutional issues presented. Instead, it cites earlier cases finding the FCA constitutional and states it "need only briefly review the reasoning for these holdings." (Dkt. 187, at 10). This problem is most pronounced on the issue of whether relators exercise significant authority. They do.

### A. The authority to litigate on behalf of the United States is significant

The "significant authority" test was set forth in *Buckley*. There, the Court considered whether members of the Federal Election Commission ("FEC") qualified as officers. It

explained that "the term 'Officers of the United States' as used in Art. II" includes "all persons who can be said to hold an office under the government.'" *Buckley*, 424 U.S. at 125-26 (quoting *United States v. Germaine*, 99 U.S. 508, 510 (1879)). The Court held that "any appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States.'" *Id.* at 126.

After concluding that FEC Commissioners were officers, the Court addressed which of the FEC's powers Commissioners could exercise given that they were not appointed in the constitutionally prescribed manner. It held that Commissioners may "properly perform duties only in aid of those functions that Congress may carry out by itself, or in an area sufficiently removed from the administration and enforcement of the public law as to permit their being performed by persons not 'Officers of the United States.'" *Id.* at 139. Chief among the powers that only officers could wield was the "discretionary power to seek judicial relief." *Id.* at 138. The Court held that "[a] lawsuit is the ultimate remedy for a breach of the law, and it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'" *Id.* (quoting U.S. Const. art. II, s 3). The *Buckley* Court emphasized that the discretion to conduct litigation is inherently an executive power: the "primary responsibility for conducting civil litigation in the courts of the United States for vindicating public rights . . . may be discharged only by persons who are 'Officers of the United States.'" *Id.* at 140.

Following *Buckley*, the Supreme Court has reiterated the core principal that the power to litigate on behalf of the United States constitutes significant authority. In *Morrison*, the Court explained it was "clear" that an independent counsel was "an 'officer' of the United States" subject to the Appointments Clause. 487 U.S. at 671 n.12. This was so even

though independent counsel was empowered "to perform only certain, limited duties. . . restricted primarily to investigation and, if appropriate, prosecution for certain federal crimes." *Id.* at 671. Nor did it matter that "an independent counsel can only act within the scope of the jurisdiction that has been granted by the Special Division pursuant to a request by the Attorney General." *Id.* at 672. Further, the position qualified as an office despite the fact that it "is 'temporary' in the sense that an independent counsel is appointed essentially to accomplish a single task, and when that task is over the office is terminated." *Id.*

Although *Morrison* involved authority over criminal actions, the Court has also held that the "power to seek daunting monetary penalties against private parties on behalf of the United States in federal court" is "a quintessentially executive power." *Seila*, 591 U.S. at 219. And it has squarely held that "the FCA imposes damages that are essentially punitive in nature." *Stevens*, 529 U.S. at 784.

The Supreme Court further underscored the importance of executive control over discretionary litigation in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). There, it explained that "the choice of how to prioritize and how aggressively to pursue legal actions against defendants who violate the law falls within the discretion of the Executive Branch, not within the purview of private plaintiffs (and their attorneys)." *Id.* at 429. The Court emphasized that "[p]rivate plaintiffs are not accountable to the people and are not charged with pursuing the public interest in enforcing a defendant's general compliance with regulatory law." *Ramirez*, 594 U.S. at 429. The Constitution thus mandates that "the Executive Branch ha[ve] exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974).

**B. Relators exercise significant authority by litigating on behalf of the United States**

In light of the foregoing case law, it is abundantly clear that relators exercise significant authority. The "responsibility for conducting civil litigation in the courts of the United States for vindicating public rights . . . may be discharged only by persons who are 'Officers of the United States.'" *Buckley*, 424 U.S. at 140. Relators do just that. They "sue on the Government's behalf," and the action is "one to vindicate the Government's interests." *Polansky*, 599 U.S. at 423, 435. "[W]hile the False Claims Act permits relators to control the False Claims Act litigation, the claim itself belongs to the United States." *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008). Relators employ "the power to seek daunting monetary penalties against private parties in federal court," which is "a quintessentially executive power." *Seila*, 591 U.S. at 199.

By initiating and conducting litigation on behalf of the United States, relators exercise a high degree of discretion. *See Freytag*, 501 U.S. at 882 (identifying the "exercise [of] significant discretion" as a factor in determining whether a position is an office). A relator "need not consult with the federal government before filing suit." *Zafirov*, 2024 WL 4349242, at *2. "Instead, a relator enjoys unfettered discretion to decide whom to investigate, whom to charge in the complaint, which claims to pursue, and which legal theories to employ." *Id.* Relators also independently decide "whether to appeal and which arguments to preserve, thereby shaping the broader legal landscape for the federal government." *Id.* For this reason, *pro se* litigants cannot act as relators. *See Mergent Servs.*, 540 F.3d at 94 (noting that the "United States might become bound by *res judicata* or *collateral estoppel* as a result of the actions of a *pro se* in bringing and losing a *qui tam* action").

The government's retention of limited authority over FCA suits does not undermine this analysis. The Appointments Clause applies with equal force to both principal and inferior officers. *See* U.S. Const. art. II, § 2, cl.2. Inferior officers are those "'whose work is directed and supervised at some level' by principal officers." *Donziger*, 38 F.4th at 300 (quoting *Edmond*, 520 U.S. at 663). Although inferior officers do not require Senate confirmation, they must be appointed by the President, the Courts, or the "Heads of Departments." U.S. Const. art. II, § 2, cl.2. Relators do not satisfy this requirement.

Further, the government's authority over *qui tam* actions is strictly confined. In the vast majority of *qui tam* cases, the government does not intervene and thus is "not a party" and "cannot do much of anything." *Polansky*, 599 U.S. at 430.[1] In such cases, the government cannot intervene later without permission. 31 U.S.C. § 3730(c)(3); *see also United States ex rel. Ross v. Indep. Health Corp.*, 2021 WL 3492917, at *2 (W.D.N.Y. Aug. 9, 2021) (explaining courts must balance the government's interest in intervening against "any possible prejudice to the relators"); *United States v. SouthEast Eye Specialists, PLLC*, 2021 WL 790889, at *1 (M.D. Tenn. Feb. 24, 2021) (denying government motion to intervene). In the vast majority of *qui tam* cases, the relator thus takes the "lead role" and is "the only person then pressing the suit." *Polansky*, 599 U.S. at 423. The FCA unambiguously directs that the relator "shall have the right to conduct the action." 31 U.S.C. § 3730(b)(4)(B).

Even in the rare cases in which the government does intervene, it lacks the powers one would expect with respect to civil litigation on behalf of the United States. The

[1] Although HealthNow contends that the *qui tam* provisions are facially unconstitutional, it submits in the alternative that the FCA's *qui tam* provisions are unconstitutional in cases like this one in which the government does not intervene. *See Sibley v. Watches*, 460 F. Supp. 3d 302, 317 (W.D.N.Y. 2020) (noting the distinction between facial and as-applied challenges).

government cannot dismiss or settle a case on its own. *See* 31 U.S.C. § 3730(c)(2)(A), (c)(2)(B). And the relator maintains the right to "unrestricted participation." 31 U.S.C. § 3730(c)(2)(C). This limited "back-end executive supervision—exercised by the government in only a fifth of cases—does not diminish the significance of an FCA relator's front-end power to bring an enforcement action against a private party in federal court on behalf of the United States." *Zafirov*, 2024 WL 4349242, at *10. That power qualifies as "significant authority" for purposes of the Appointments Clause.

## POINT II
## THE REPORT DID NOT APPLY THE *DONZIGER* FACTORS

The Second Circuit has held three factors determine whether a temporary position qualifies as continuing under the Appointment Clause: "(1) the position is not personal to a particular individual; (2) the position is not transient or fleeting; and (3) the duties of the position are more than incidental." *Donziger*, 38 F.4th at 297. The Report does not apply the *Donziger* factors, relegating this key case to a footnote. (Dkt. 187, at 11 n.4). Worse still, the Report dismisses its importance, asserting that the Second Circuit merely "held that special prosecutors are officers under the Appointments Clause because they wield federal prosecutorial power and hold a position that is not personal to a specific individual and may last for years." (Dkt. 187, at 11 n.4). The Report states that "is not true of relators." (*Id.*). As described below, the Report is incorrect: relators do share those characteristics. Further, the Second Circuit did not simply declare that special prosecutors are officers, it established a three-part test for making officer determinations. The Report erred in ignoring *Donziger*.

### A. Realtors do not hold a personal position

A relator's position does "not depend on the identity of the person occupying it." *Donziger*, 38 F.4th at 297. Any person can serve as a relator under 31 U.S.C. § 3730(b).

Further, the powers of a relator can "continue, though the person be changed" and are "capable of persisting beyond an individual's incumbency." *Id.* at 297 & n.3 (quoting *United States v. Maurice*, 26 F. Cas. 1211, 1214 (C.C.D. Va. 1823) and James A. Heilpern, *Temporary Officers*, 26 Geo. Mason L. Rev. 753, 771 (2019)).

The fact that a *qui tam* action may continue after the death of a relator plainly establishes that the office is not personal. *See, e.g.*, *United States v. NEC Corp.*, 11 F.3d 136, 139 (11th Cir. 1993), *as amended* (Jan. 12, 1994) (substituting estate representative as relator); *U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*, 603 F. Supp. 2d 677, 684 (S.D.N.Y. 2009) (same). Although the "first-to-file bar" precludes additional relators from intervening in a *qui tam* suit under Fed. R. Civ. P. 24, *see* 31 U.S.C. § 3730(b)(5), the complaint in a *qui tam* action may be amended to "add, remove, or swap relators." *In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 974 F.3d 228, 236 (3d Cir. 2020).[2]

Accordingly, *qui tam* suits can go forward with substitute or additional relators in a variety of contexts. *See, e.g.*, *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 364 (5th Cir. 2014) (affirming substitution of bankruptcy trustee as relator); *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 31 F.3d 1015, 1018 (10th Cir. 1994) (permitting additional relators to be added through amended complaint); *United States ex rel. Angelo v. Allstate Ins. Co.*, 620 F. Supp. 3d 674, 682 (E.D. Mich. 2022) (permitting LLC to join suit as co-relator through amended complaint); *United States ex rel. Blyn v. Triumph Grp., Inc.*, 2016 WL

[2] The "first-to-file bar" is not an indication that Congress intended the relator position to be personal, but was merely designed "to discourage opportunistic plaintiffs from bringing parasitic lawsuits whereby would-be relators merely feed off a previous disclosure of fraud." *United States ex rel. Bryant v. Cmty. Health Sys., Inc.*, 24 F.4th 1024, 1030 (6th Cir. 2022) (citation omitted).

1664904, at *4 (D. Utah Apr. 26, 2016) (holding individuals "could be substituted as relators in this action through the plaintiff's right to amend"). The position is not personal.

**B. A relator's position is not transient or fleeting**

Although it did not consider the *Donziger* factors, the Report did state that a relator's "position only exists for the duration of the lawsuit." (Dkt. 187, at 11 (quoting *Gonite*, 2025 WL 1184109, at *3)). To the extent the Report suggest this makes the position "transient or fleeting," *Donziger*, 38 F.4th at 297, that suggestion is erroneous. The Second Circuit has clearly held that a "'continuing position' does not exclusively refer to permanent positions." *Id.* at 296. Indeed, the Supreme Court "has held that a temporary position, like a special prosecutor, can satisfy this requirement." *Id.* (citing *Morrison*, 487 U.S. at 664).

In *Donziger* itself, the Second Circuit held that although special prosecutors' "duties terminate upon performance, the positions are not transient or fleeting." *Id.* at 297. This conclusion flowed logically from *Morrison*, where the Supreme Court held it was "clear" that an independent counsel was an officer even though the position "is 'temporary' in the sense that an independent counsel is appointed essentially to accomplish a single task, and when that task is over the office is terminated." 487 U.S. at 672; *see also Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.*, 821 F.3d 19, 37-38 (D.C. Cir. 2016) (providing a "resounding 'yes'" to the question of whether an arbitrator was an officer even though he served only for a single arbitration). Tenure through a single case does not render the position fleeting.

In attempting to distinguish *Donziger*, the Report also appears to state that a relator's tenure does not "last for years." (Dkt. 187, at 11 n.4). That is obviously incorrect. The relator in this case has been litigating on behalf of the United States for more than nine years. In *Donzinger*, the Second Circuit determined an office was not transient or fleeting

because the special prosecutor had "served for nearly three years." 38 F.4th at 297. The position of relator, like that of special prosecutor "last[s] for an indefinite period of time, possibly years, and thus neither position is transient or fleeting." *Id.* at 298. In this case the Relator has controlled litigation on behalf of the United States for nine years (and counting).

**C. The duties of a relator are more than incidental**

For the reasons set forth in Section I.B, *supra*, a relator exercises substantial authority and thus a relator's duties are more than merely incidental. In *Donziger*, the Second Circuit held that a special prosecutor's duties qualified because "prosecution generally is a core power of government." 38 F.4th at 298. The Report attempts to distinguish away *Donzinger* on this basis. (Dkt. 187, at 11 n.4). While it is true that *Donziger*, like *Morrison*, involved criminal enforcement, this is a distinction without a difference.

The *Buckley* Court directly held that "primary responsibility for conducting civil litigation in the courts of the United States for vindicating public rights" are "functions [that] may be discharged only by persons who are 'Officers of the United States.'" 424 U.S. at 140. Further, as discussed above, the "power to seek daunting monetary penalties against private parties on behalf of the United States in federal court" is "a quintessentially executive power." *Seila*, 591 U.S. 19, 219 (2020). And there can be no dispute that "the FCA imposes damages that are essentially punitive in nature." *Stevens*, 529 U.S. at 784.

The Report erred in ignoring the *Donziger* factors. Relators satisfy all three prongs of that test. Accordingly, the position of relator is a continuing office.

**POINT III**
**THE REPORT DOES NOT CONSIDER HEALTHNOW'S ARGUMENTS SHOWING THAT OUT-OF-CIRCUIT CASES ARE NOT PERSUASIVE**

The Report relies exclusively on out-of-circuit authority, but does not address HealthNow's arguments showing those cases are unpersuasive. Initially, all four of the Circuit Court decisions cited in the Report were issued more than two decades ago. (*See* Dkt. 187, at 8-9). For that reason, they do not consider more recent cases from the Supreme Court addressing Article II, including *Aurelius Inv., LLC*, 590 U.S. 448, *Seila*, 591 U.S. 197, and *Lucia*, 585 U.S. 237.[3] This problem is most clearly exemplified by the Ninth Circuit's decision in *Kelly*, which centers its analysis on the proposition that the Appointments Clause serves only "the purpose of maintaining the separation of powers in the constitutional scheme." 9 F.3d at 758. The Supreme Court has since clarified that the Appointments Clause also works "to ensure political accountability." *Aurelius Inv., LLC*, 590 U.S. at 457.

Second, all of the Circuit Court cases cited in the Report rest in part on the temporary nature of relators. *See United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 805 (10th Cir. 2002); *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 757-58 (5th Cir. 2001); *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994); *see also Kelly*, 9 F.3d. at 758 (noting a "relator's responsibility only extends to a single case"). They do not apply the Second Circuit's rigorous, three-part test on this issue, *Donziger*, 38 F.4th 290, 296-98, which is of course binding on this Court. For the reasons set forth in Section II, relators occupy a continuing office under that framework.

Third, some of the decisions rely on the argument that relators do not draw a government salary. *See Stone*, 282 F.3d at 805; *Riley*, 252 F.3d at 758. However, the

---

[3] Notably, the Report does not cite any of these cases either. (*See* Dkt. 187).

government has itself acknowledged that the Appointments Clause can "apply to persons who are not employees of the federal Government." *Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, 114 (2007) (requiring that an officer be on the "payroll of the federal government . . . would conflict with the original meaning of the Appointments Clause"). The Constitution specifically recognizes "offices of honor," to which no salary attaches. U.S. Const. art. I, § 3, cl. 7. Indeed, most federal officers in the first days of the Republic were not paid a salary, but were simply authorized to collect fees. *See* 31 Op. O.L.C. 73, at 120. Early Appointments Clause cases stated that an office may or may not involve government employment. *See United States v. Hartwell*, 73 U.S. 385, 393 (1867) (describing an Office as "a public station, or employment"); *Maurice*, 26 F. Cas. at 1214 (describing an Office as "a public charge or employment").

Finally, the District Court decisions cited by the Report do not meaningfully contribute to the analysis. Some make the same mistake as the Circuit Court decisions regarding the temporary nature of relators. *See, e.g.*, *Gonite*, 2025 WL 1184109, at *3; *United States ex rel. Butler v. Shikara*, 748 F. Supp. 3d 1277, 1296 (S.D. Fla. 2024). Others simply reject an Appointments Clause challenge without any meaningful analysis. *See, e.g.*, *United States ex rel. Penelow v. Janssen Prods., LP*, 2025 WL 937504, at *12 (D.N. J. Mar. 28, 2025), *appeal docketed*, No. 25-1818 (3d Cir. April 29, 2025); *United States ex rel. CLJ, LLC v. Halickman*, 2024 WL 3332055, at *21 n.5 (S.D. Fla. June 14, 2024). Still others rest on prior, binding Circuit Court authority, which is not present in this case. *See, e.g.*, *United States ex rel. Adams v. Chattanooga Hamilton Cnty. Hosp. Auth.*, 2024 WL 4784372, at *2 (E.D. Tenn. Nov. 7, 2024); *United States ex rel. Thomas v. Care*, 2023 WL 7413669, at *4 (D. Ariz. Nov. 9, 2023). None of these cases conduct the requisite analysis set forth above.

## POINT IV
## THE COUNTERARGUMENTS SUBMITTED BY BARNES AND THE GOVERNMENT LACK MERIT

Although the Report does not engage with the foregoing arguments, Barnes and the government asserted several counterarguments in their briefing. All of them lack merit.

### A. A history of unconstitutional practice cannot rescue the FCA

The government's primary argument is that the FCA's *qui tam* provisions must be constitutional because other, earlier statutes employed similar devices. Yet the law is clear that "historical patterns cannot justify contemporary violations of constitutional guarantees." *Marsh v. Chambers*, 463 U.S. 783, 790 (1983); *see also Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014) (explaining prior cases "must not be understood as permitting a practice that would amount to a constitutional violation if not for its historical foundation").

Courts have sometimes looked to "a regular course of practice to liquidate & settle the meaning of" a constitutional provision. *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 525 (2014) (quoting Letter to Spencer Roane (Sept. 2, 1819), in 8 Writings of James Madison 450 (G. Hunt ed. 1908)). However, the proponent of this type of "liquidation" must demonstrate "[a] course of deliberate practice." *Vidal v. Elster*, 602 U.S. 286, 323 (2024) (Barrett, J., concurring). Actions "taken thoughtlessly, by force of long tradition" do not qualify. *Marsh*, 463 U.S. at 791. This distinction carries special force in the separation-of-powers context. As Justice Thomas explained, courts "should be especially careful not to overread the early history of federal *qui tam* statutes given that the Constitution's creation of a separate Executive Branch coequal to the Legislature was a structural departure from the English system of parliamentary supremacy, from which many legal practices like *qui tam*

were inherited." *Polansky*, 599 U.S. at 450 (2023) (Thomas, J., dissenting) (citing Saikrishna Prakash, *The Chief Prosecutor*, 73 Geo. Wash. L. Rev. 521, 589 (2005)).

The early *qui tam* statutes cited by the government, including those referenced in *Stevens*, 529 U.S. at 776-77 nn.5-7, differ in many respects from the current version of the FCA. Some allowed injured parties to bring suit, with only incidental recoveries going to the government. *See, e.g.*, Act of May 31, 1790, ch. 15, § 2, 1 Stat. 124, 124-25 (concerning authors who sued for copyright infringement). Others were simple bounty statutes. *See, e.g.*, Act of July 31, 1789, ch. 5, § 29, 1 Stat. 44–45 (granting informer bounty for customs violations). Importantly, these early statutes were quickly abandoned. *See* Evan Caminker, *The Constitutionality of Qui Tam Actions*, 99 Yale L.J. 341, 342 (1989). Even the FCA "fell into relative desuetude" after the Civil War and "[b]y 1986, except for a flurry of activity during World War II, it had become an anachronism." *Constitutionality of the Qui Tam Provisions of the False Claims Act*, 13 Op. O.L.C. 207, 209 (1989) (William Barr, Ass't Att'y Gen). "A fair reading of the history of *qui tam* in the United States reveals it as a transitory and aberrational device that never gained a secure foothold within our constitutional structure because of its fundamental incompatibility with that structure." *Id.* at 213.

Further, the government's reliance on historical practice fails because it cannot dispute that many early *qui tam* statutes were patently unconstitutional. Those statutes frequently permitted private parties to enforce criminal law. *See, e.g.*, Act of Feb. 20, 1792, ch. 7, §§ 16, 25, 1 Stat. 232, 236, 239 (permitting informers to bring suit and providing for "imprison[ment] not exceeding six months"); Act of Mar. 1, 1793, ch. 19, §§ 7, 12, 1 Stat. 329, 330, 331 (permitting informer suits and directing that offenders may "be imprisoned . . . not exceeding twelve months."); *see also* Harold J. Krent, *Executive Control over Criminal Law*

*Enforcement: Some Lessons from History*, 38 Am. U.L. Rev. 275, 296-99 (1989). Moreover, many of the early *qui tam* statutes lacked any executive oversight. *See, e.g.*, *United States v. Griswold*, 26 F. Cas. 42, 44 (D. Or. 1877) (stating "the rule of law is, and the practice always has been, that" the government "has no right to interfere with the conduct of [a *qui tam* action], except as specially provided by statute").

Private criminal prosecutions conducted without executive oversight are obviously inconsistent with Article II. *See Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972) (holding "in our federal system crimes are always prosecuted by the Federal Government"); *see also Seila*, 591 U.S. at 219 (describing the power "to initiate criminal investigations and prosecutions" as "core executive power"). Accordingly, the government is either maintaining that all *qui tam* statutes—even criminal ones—are constitutionally permissible, or it is relying on unconstitutional statutes to rescue the FCA. In either event, the government is wrong.

**B. Barnes and the government rely on inapposite cases**

Both Barnes and the government relied extensively on inapposite cases in their briefing before the Magistrate Judge. First, the government argued that relators are similar to the civil surgeons in *Germaine* or the merchant appraisers in *Auffmordt v. Hedden*, 137 U.S. 310 (1890), who were held not to be officers. But these positions bear little resemblance to relators. Both conducted only "discrete, short-lived tasks." *Donziger*, 38 F.4th at 299. Civil surgeons simply engaged in "'examination[s] of pensioners' 'when called on by the Commissioner of Pensions in some special case.'" *Id.* at 298 (quoting *Germaine*, 99 U.S. at 512). Merchant appraisers were merely "assistant[s]" who were "selected for the particular case on the request of the importer." *Id.* at 298 (quoting *Auffmordt*, 137 U.S. at 312, 327). In

contrast, relators occupy positions that last years and exercise significant discretion in commencing and litigating actions on behalf of the United States.

Second, Barnes pointed to *Atlantic States Legal Found., Inc. v. Buffalo Envelope, Div. of Am. Envelope Co.*, 823 F. Supp. 1065 (W.D.N.Y. 1993). That case predates many of the relevant authorities upon which HealthNow relies. In any event, it concerned suits by "private individuals who are aggrieved by violations of [a] statute" suing on their own behalf. *Id.* at 1075. That type of statute does not implicate the Appointment Clause prohibition on non-officers suing "for vindicating public rights." *Buckley*, 424 U.S. at 140.

Third, Barnes cited *dicta* from *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148 (2d Cir. 1993), arguing that the Second Circuit found the FCA's *qui tam* "provisions do not usurp the executive branch's litigating function." *Id.* at 1155. The Report also cited *Kreindler*. (Dkt. 187, at 12). However, *Kreindler* considered standing under Article III, not an Article II challenge. That type of unconsidered *dicta* is not binding. *See United States v. Sealed Defendant One*, 49 F.4th 690, 699 (2d Cir. 2022). Barnes makes the same error by relying on *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 272 (2019). That decision was merely interpreting whether a relator constituted "an 'official of the United States' in the ordinary sense of that phrase" for purposes of the FCA's statute of limitations. *Id.* Just a year later, the Supreme Court explicitly stated that it "express[ed] no view on the question whether *qui tam* suits violate Article II, in particular the Appointments Clause of § 2 and the 'take Care' Clause of § 3." *Stevens*, 529 U.S. at 778 n.8.

Barnes nonetheless quoted *Stevens* for the proposition that a relator is not exercising executive power because the "FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim." 529 U.S. at 773. But *Stevens* held that

"the United States' injury in fact suffices to confer standing" on a relator. *Id.* Relators "sue on the Government's behalf . . . to vindicate the Government's interests." *Polansky*, 599 U.S. at 423, 435, 437. Those are "functions [that] may be discharged only by persons who are 'Officers of the United States.'" *Buckley*, 424 U.S. at 140.

**POINT V**
**THE REPORT ERRED IN SUMMARILY REJECTING HEALTHNOW'S ARGUMENTS UNDER THE VESTING AND TAKE CARE CLAUSES**

The Report erred in stating that HealthNow's arguments under the Vesting and Take Care Clauses were "foreclosed" by a number of out-of-circuit decisions. (Dkt. 187, at 14). As the Supreme Court has held, the "entire 'executive Power' belongs to the President alone." *Seila*, 591 U.S. at 213. The FCA's *qui tam* provisions contravene this directive by vesting in self-appointed relators the "quintessentially executive power" of conducting litigation "on behalf of the United States." *Id.* at 219. That power must be exercised by the Executive Branch under the Vesting Clause. U.S. Const. art. II, § 1, cl. 1.

The FCA's *qui tam* provisions also contravene the Take Care Clause, U.S. Const. art. II, § 3. The President's power to remove subordinates is "essential to the execution of the laws by him." *Myers*, 272 U.S. at 117. A contrary rule "'would make it impossible for the President . . . to take care that the laws be faithfully executed.'" *Seila*, 591 U.S. at 214 (quoting *Myers*, 272 U.S. at 164).[4] Yet the President cannot remove relators. If a relator engages in conduct the President disapproves of, the only remedy would be to seek dismissal of the action. That motion would be subject to the discretion of the court. *See* 31 U.S.C. §

[4] There are two exceptions to the President's removal power, neither of which applies to relators. The first concerns multimember expert agencies. *See generally Humphrey's Executor v. United States*, 295 U.S. 602 (1935)). The second concerns "inferior officers with limited duties and no policymaking or administrative authority." *Seila*, 591 U.S. at 218. As explained above, relators exercise significant authority.

3730(c)(2)(A); *Polansky*, 599 U.S. at 438. By stripping the President of control over litigation on behalf of the United States, the FCA's *qui tam* provisions violate the Take Care Clause.

## POINT VI
## THIS MOTION IS TIMELY AND JUSTIFIES AMENDING THE ANSWER

The Report correctly determined that this motion is timely. (Dkt, 187, at 7). A motion for judgment on the pleadings may be filed any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). No trial date has been set here, and the issues presented are purely legal. However, the Report erred by recommending that HealthNow be denied an opportunity to amend its answer to include its constitutional defenses. (Dkt. 187, at 15-16). A party should be permitted to amend "in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Barnes will not be prejudiced by amendment of the answer. Finally, amendment would not be futile for the reasons set forth above.

## CONCLUSION

HealthNow respectfully requests the Court reject the Report and hold that the *qui tam* provisions of the FCA are unconstitutional.

Dated: Buffalo, New York
May 30, 2025

PHILLIPS LYTLE LLP

By: *Alan J. Bozer*

Alan J. Bozer
William P. Keefer
Lisa L. Smith
Joshua Glasgow
Sam M. Williams
Attorneys for Defendant
*HealthNow New York Inc., now known as Highmark Western and Northeastern New York Inc., etc.*
One Canalside, 125 Main Street
Buffalo, New York 14203-2887