UNITED STATES DISTRICT COURT
FILED
SEP 10 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MADELYN B. BARNES, *by and on behalf of the United States of America, Relator, and by and on behalf of the State of New York, Relator,*

Relator,

v.

16-CV-88 (JLS) (HKS)

HEALTHNOW NEW YORK, INC., *doing business as BlueCross BlueShield of Western New York, doing business as Blueshield of Northeastern New York, now known as Highmark Western and Northeastern New York,*

Defendant.

---

**DECISION AND ORDER**

Relator Madelyn Barnes brings claims against Defendant HealthNow New York under the federal and New York State False Claims Acts. *See* Dkt. 94. Currently before this Court is Defendant's motion for judgment on the pleadings, which challenges the constitutionality of the *qui tam* provision of the False Claims Act, and for leave to amend its answer.[1] Dkt. 171. Relator opposed (Dkt. 183; Dkt. 184), and Defendant replied (Dkt. 186). The United States intervened for the

---

[1] Also pending before this Court is Defendant's motion for reconsideration of this Court's December 21, 2020 order on Defendant's motion to dismiss. Dkt. 191. This decision and order does not address that motion. In addition, there is a discovery motion, currently stayed, pending before Judge Schroeder. Dkt. 170; Dkt. 179.

limited purpose of defending the constitutionality of the *qui tam* provision (Dkt. 182), and opposed Defendant's motion (Dkt. 183).

United States Magistrate Judge H. Kenneth Schroeder, Jr.,[2] issued a Report and Recommendation ("R&R"), recommending that this Court (1) deny Defendant judgment on the pleadings, and (2) deny Defendant leave to amend its answer. Dkt. 187.

Defendant objected to the R&R. Dkt. 190. Relator and the United States responded to Defendant's objections. Dkt. 202; Dkt. 203. Defendant replied. Dkt. 206. This Court also allowed the Chamber of Commerce of the United States to file an *amicus* brief. Dkt. 208; *see also* Dkt. 197-2. Neither party responded to the *amicus* brief.

In July 2025, the parties attended a status conference with this Court to discuss the status of pending motions and outstanding discovery, a possible interlocutory appeal and associated stay, and the utility of additional mediation. Dkt. 216. Each party filed a letter brief with its position on whether discovery could proceed during any interlocutory appeal. Dkt. 218; Dkt. 219.

Thereafter, the Court ordered the parties to participate in mediation. Dkt. 220. The parties engaged in multiple mediation sessions between September 2025 and August 2026. Dkt. 222; Dkt. 224; Dkt. 226; Dkt. 228; Dkt. 229; Dkt. 230; Dkt.

---

[2] The Court referred this case to Judge Schroeder for all proceedings under 28 U.S.C. §§ 636(b)(1)(A), (B), and (C). Dkt. 75.

231; Dkt. 235. At the Court's request, the parties filed status reports with their views of next steps in the case. Dkt. 234; Dkt. 236; Dkt. 237; Dkt. 238.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). It must conduct a *de novo* review of those portions of a magistrate judge's recommendation to which objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). But neither 28 U.S.C. § 636 nor Federal Rule of Civil Procedure 72 requires a district court to review the recommendation of a magistrate judge to which no objections are raised. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985).

This Court carefully reviewed the R&R, the briefing on objections, and the relevant record. Based on its *de novo* review, the Court accepts Judge Schroeder's recommendation to deny Defendant's motion for judgment on the pleadings and for leave to amend its answer.

For the reasons stated above and in the R&R (Dkt. 187), which is appended to this decision and order as Exhibit A, the Court DENIES Defendant's motion for judgment on the pleadings and for leave to amend its answer (Dkt. 171).

Given the state of decisional law on the separation-of-powers issue, the status of the issue under Second Circuit caselaw, and the age of various cited decisions that predate more modern pronouncements on the issue, this Court has decided to accept the R&R, deny the motion, and certify that the Court's order on this issue "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially

advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). *See* 28 U.S.C. § 1292(b).

As Justice Thomas has recognized:

> There are substantial arguments that the qui tam device is inconsistent with Article II and that private relators may not represent the interests of the United States in litigation. Because the entire executive Power belongs to the President alone, it can only be exercised by the President and those acting under him.

*See, e.g., United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 449 (2023) (Thomas, J., dissenting) (citation modified). A lawsuit "is the ultimate remedy for a breach of the law"; the Supreme Court, therefore, "has held that conducting civil litigation for vindicating public rights of the United States is an executive function that may be discharged only by persons who are 'Officers of the United States' under the Appointments Clause." *Id.* (citation modified). Because "[a] private relator under the FCA . . . is not appointed as an officer of the United States under Article II," it "appears to follow that Congress cannot authorize a private relator to wield executive authority to represent the United States' interests in civil litigation." *Id.* at 449–50 (citation modified).

As a result, "there is good reason to suspect that Article II does not permit private relators to represent the United States' interests in FCA suits." *Id.* at 450. *See also id.* at 442 (Kavanaugh & Barrett, JJ., concurring) (agreeing with Justice Thomas that "there are substantial arguments that the *qui tam* device is inconsistent with Article II and that private relators may not represent the

interests of the United States in litigation." (citation modified)); *United States ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, L.L.C.*, 157 F.4th 758, 766–67 (5th Cir. 2025) (Ho, J., concurring) (recognizing that "*qui tam* relators present . . . constitutional concerns" because they "presume to represent the United States government in federal court, and to defend the interests of the United States Treasury against fraud" but "are neither appointed by, nor accountable to, the President"); *United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*, 133 F.4th 395, 412 (5th Cir. 2025) (Duncan, J., concurring) ("A Constitution like ours—one that vests *all* federal executive power in a President—does not allow this outsourcing of prosecutorial power to a private person. That is not some arcane technicality. If people outside government could wield the government's power—then the government's promised accountability to the people would be an illusion. Yet that is precisely what happens when a private person brings a *qui tam* action under the FCA." (citation modified)).[3]

Defendant and the *amicus* (Dkt. 197-2) raise strong arguments that the FCA's *qui tam* device indeed violates the Constitution's Vesting Clause and Take-Care Clause, as well as—possibly—the Appointments Clause. *See* U.S. Const. art. II, §§ 1, 2, 3.

---

[3] *Cf. United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*, --- F.4th ---, 2026 WL 2581886, at *7 (11th Cir. Sept. 1, 2026) (holding that the "*qui tam* provisions of the FCA do not violate the Appointments Clause," vacating the district court's order, and "remand[ing] for the district court to evaluate the defendants' Take Care Clause and Vesting Clause arguments").

The Second Circuit's attention to this matter at this juncture not only benefits the litigation now before the Court but also would resolve the issue for numerous cases within the Circuit.

**CONCLUSION**

For the above reasons, Defendant's motion for judgment on the pleadings and leave to amend its answer (Dkt. 171) is DENIED. All dates and deadlines in this matter are STAYED pending Defendant's application for appeal, the Second Circuit's resolution of that application, and—if permitted—such appeal. The parties shall file status reports with this Court at the conclusion of each of these events.

SO ORDERED.

Dated: September 10, 2026
Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**MADELYN B. BARNES By and on Behalf of the United States of America, and By and on Behalf of the State of New York,**

**Relator,**

**-v-** **16-CV-88-JLS-HKS**

**HEALTHNOW NEW YORK INC., D/B/A BLUECROSS BLUESHIELD OF WESTERN NEW YORK, AND D/B/A BLUESHIELD OF NORTHEASTERN NEW YORK, NOW KNOWN AS HIGHMARK WESTERN AND NORTHEASTERN NEW YORK INC.,**

**Defendant.**

---

**REPORT, RECOMMENDATION AND ORDER**

This case was referred to the undersigned by the Hon. John L. Sinatra, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #75.

Relator Madelyn B. Barnes is the plaintiff in this *qui tam* action on behalf of the United States of America and New York State under the False Claims Act, 31 U.S.C. § 3729 *et seq*. ("FCA"), and the New York State False Claims Act, N.Y. State Fin. Law § 187 *et seq*. ("NYSFCA"). Dkt. #94. Barnes alleges that defendant HealthNow New York Inc., d/b/a BlueCross BlueShield of Western New York, and d/b/a BlueShield of Northeastern New York, now known as Highmark Western and Northeastern New York Inc. ("HealthNow"), improperly overpaid healthcare claims at the expense of the United

States, New York State, and "local governments/municipalities" by submitting false statements to these entities. *Id*.

Currently before the Court is defendant's motion for judgment on the pleadings or for leave to amend its answer. Dkt. #171.

## BACKGROUND

The factual background of this matter was set forth in a prior Report, Recommendation and Order, Dkt. #113, and three prior Decisions and Orders, Dkt. ##123, 147, 166, and it is incorporated here.

On January 31, 2025—after the Court issued its most recent discovery order and after the parties engaged in additional discovery—plaintiff filed a motion for reconsideration, to compel, for contempt, for sanctions, and to extend the expert disclosure deadline. Dkt. #170. That motion alleges irregularities in defendant's discovery conduct and its compliance with the Court's orders.

The next business day, defendant filed the instant motion for judgment on the pleadings challenging the constitutionality of the *qui tam* provisions of the FCA. Dkt. #171. Defendant also served on the Department of Justice the Notice of Constitutional Challenge required by Fed. R. Civ. P. 5.1. Dkt. ##172, 178.

The Court then stayed plaintiff's motion for reconsideration pending resolution of defendant's motion for judgment on the pleadings. Dkt. #179.

On April 7, 2025, the United States of America filed a Notice of Intervention for the limited purpose of defending the constitutionality of the *qui tam* provision of the FCA. Dkt. #182.

Defendant's motion is now fully briefed and ripe for resolution.

## **DISCUSSION AND ANALYSIS**

### **Motion for Judgment on the Pleadings**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (citation and internal quotation marks omitted).

Thus, to survive a Rule 12(c) motion, plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

## <u>Constitutionality of the FCA *Qui Tam* Provision</u>

### ***Overview of the FCA***

"The False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, imposes civil liability on any person who presents false or fraudulent claims for payment to the Federal Government." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 423 (2023). "The statute is unusual in authorizing private parties—known as relators—to sue on the Government's behalf." *Id.* Such actions are known as *qui tam* actions. *Id.* at 424. "If the action leads to a recovery, the relator may receive up to 30% of the total." *Id.* at 425 (citation omitted).

When a relator files a *qui tam* action—which is brought in the name of the Government—the Government has the option to intervene, in which case "it takes the lead role" in the litigation. *Id.* at 423. "Only if the Government passes on intervention does the relator 'have the right to conduct the action.'" *Id.* at 425 (quoting 31 U.S.C. § 3730(b)(4)(B)).

Regardless of intervention, the Government is a "real party in interest" in a *qui tam* suit. *Id.* (citation omitted). *See also United States ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1154 (2d Cir. 1993) ("As we have previously stated, although *qui tam* actions allow individual citizens to initiate enforcement actions against wrongdoers who cause injury to the public at large, the Government remains the real party in interest in any such action.") (citations and internal quotation marks omitted).

Finally, "even in cases where the government does not intervene, there are a number of control mechanisms present in the qui tam provisions of the FCA so that the Executive [Branch] nonetheless retains a significant amount of control over the litigation." *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753 (5th Cir. 2001).

***The Polansky Concurrences/Dissent and the Zafirov Decision***

In *Polansky*, the Supreme Court held that the Government may move to dismiss an FCA action so long as it has intervened at some point in the litigation, and such motions are subject to Rule 41 of the Federal Rules of Civil Procedure. *Polansky*, 599 U.S. at 433-439.

Although *Polansky* did not present any constitutional questions, three Justices—Kavanaugh, Barrett, and Thomas—opined that there are "substantial arguments that the *qui tam* device is inconsistent with Article II and that private relators may not represent the interests of the United States in litigation." *Id.* at 442, 449-452.

Specifically, Justice Kavanaugh, in a concurrence joined by Justice Barrett, stated that "the Court should consider the competing arguments on the Article II issue in an appropriate case." *Id.* at 442.

In a dissent, Justice Thomas recognized that such an Article II problem might not arise insofar as a relator brings the *qui tam* action on his own behalf, as expressly permitted by the FCA. *Id.* at 451. However, he discussed the arguments against

the constitutionality of a relator representing the interests of the United States, concluding simply that "these are complex questions." *Id.* at 452.

As also relevant, on September 30, 2024, a district court in Florida held that the FCA's *qui tam* provisions violate Article II's Appointments Clause. *United States ex rel. Zafirov v. Florida Med. Associates, LLC*, Civ. No. 19-1236, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024), *appeals docketed*, Nos. 24-13581, 24-13583 (11th Cir. Oct. 30, 2024).[1]

***Timeliness of Defendant's Motion***

Plaintiff argues, as a threshold matter, that defendant's constitutional challenge is untimely. Dkt. #184, pp. 11-14.

Specifically, plaintiff notes that *Polansky*, on which defendant relies, was issued on June 16, 2023. Secondly, she notes that the *Zafirov* decision was rendered on September 30, 2024, and defendant acknowledged it in a prior filing in this matter on November 8, 2024. Dkt. #154, p. 18. Nonetheless, defendant did not file its present Rule 12(c) motion until February 3, 2025, and it did so "on the heels of a motion filed by Plaintiff to resolve critical outstanding discovery and expert discovery matters." Dkt. #184, p. 13.

---

[1] The *Zafirov* Court thrice cited Justice Thomas's dissent in *Polansky*. *Id.* at 1312, 1319, 1324. At the same time, however, the Court noted that the Supreme Court had "reserved" the Article II issue. *Id.* at 1324.

The Court agrees that the timing of defendant's motion is suspect. If defendant believed, following *Polansky* and then *Zafirov*, that it had a meritorious basis for moving to dismiss this action on constitutional grounds, one would expect it to have moved quickly, thereby possibly avoiding the additional discovery which it opposed. Indeed, defendant stated as much in its November 8, 2024 filing. Dkt. #154, p. 18 ("In light of these developments, prolonging this litigation and increasing the attendant expenses to both parties by unnecessarily extending discovery rather than proceeding to dispositive motions that may result in the dismissal of the case is therefore not in the interest of the court or parties.").

Nonetheless, the Court will not recommend denial of defendant's motion on timeliness grounds. First, as noted above, a motion under Rule 12(c) may properly be filed any time after the pleadings have closed so long as it does not delay trial. No trial date has been set in this matter, and the present motion presents a purely legal question. *See, e.g., United States ex rel. Wallace v. Exactech, Inc.*, 703 F. Supp.3d 1356, 1362 (N.D. Ala. 2023) (rejecting argument that motion to dismiss challenging FCA *qui tam* as unconstitutional was untimely; the defense would not delay trial or distract parties from trial preparation, and motion raised purely legal question).

More importantly, as discussed below, the Court concludes that defendant's constitutional challenge is without merit, and the Court will thus recommend dismissal on that basis.

***Merits***

**The Appointments Clause**

Defendant first argues that the FCA's *qui tam* provisions violate the Appointments Clause of the United States Constitution. Dkt. #171-2, pp. 11-26.

The Appointments Clause states:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and ***all other Officers of the United States***, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2 (emphasis added).

Defendant argues that the FCA's *qui tam* provision bestows upon relators significant authority to enforce the law of the United States, with only limited supervision by the Government; that they occupy "continuing positions established by law"; and that they therefore are "Officers of the United States" within the meaning of the Appointments Clause. Dkt. #171-2, pp. 11-26.

However, as plaintiff and the United States note, every federal court of appeals that has addressed this issue has rejected that argument. *See United States v. Rockwell Int'l Corp.*, 282 F.3d 787, 805 (10th Cir. 2002) ("Since *qui tam* relators do not meet these requirements, quoted *supra*, we, like the other circuits that have considered

the question, hold that the FCA's *qui tam* provisions do not contravene the Appointments Clause."); *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 758 (5th Cir. 2001) ("Therefore, we are persuaded that the FCA's qui tam provisions do not violate the Appointments Clause."); *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994) ("Similarly, we are not persuaded by GE's claim that the *qui tam* provisions violate the Appointments Clause of the Constitution."); *United States v. Boeing Co.*, 9 F.3d 743, 759 (9th Cir. 1993) (holding that "the qui tam provisions do not violate the Appointments Clause").[2]

District courts have also overwhelmingly rejected Appointments-Clause challenges to the *qui tam* provisions of the FCA. *See United States ex rel. Penelow v. Janssen Prods., LP*, Civil Action No. 12-7758 (ZNQ) (JBD), 2025 WL 937504, at *12 (D. N. J. Mar. 28, 2025), *appeal docketed*, No. 25-1818 (3d Cir. April 29, 2025); *United States ex rel. Gonite v. UnitedHealthcare of Georgia, Inc.*, CIVIL ACTION NO. 5:19-cv-246 (MTT), 2025 WL 1184109, at *3 (M.D. Ga. April 23, 2025); *United States ex rel. Adams v. Chattanooga Hamilton Cnty. Hosp. Auth.*, Case No. 1:21-cv-84, 2024 WL 4784372, at *2-3 (E.D. Tenn. Nov. 7, 2024); *United States ex rel. Butler v. Shikara*, 748 F. Supp.3d 1277, 1295-1296 (S.D. Fla. 2024); *United States ex rel. Resolution NJ LLC v. Riverside Med. Grp., P.C.,* Civil Action No. 22-04165 (SDW) (LDW), 2024 WL 4100372, at *5 (D.N.J. Sept. 6, 2024), *vacated in part on other grounds*, 2024 WL 5182395 (D.N.J. Dec. 20, 2024); *United States ex rel. CLJ, LLC v. Halickman*, Case No. 20-cv-80645-Matthewman,

[2] One Fifth Circuit judge recently agreed with the doubts raised by the three Justices in *Polansky*, but it was in a concurrence in which the judge acknowledged that binding authority was to the contrary. *United States ex rel. Montcrief v. Peripheral Vascular Associates, P.A.,* 133 F.4th 395, 410-412 (5th Cir. 2025).

2024 WL 3332055, at *21, n. 5 (S.D. Fla. June 14, 2024); *United States ex rel. Wallace v. Exactech, Inc.*, 703 F. Supp.3d 1356, 1364 (N.D. Ala. 2023); *United States ex rel. Thomas v. Mercy Care,* No. CV-22-00512-PHX-JAT, 2023 WL 7413669, at *4 D. Ariz. Nov. 9, 2023); *United States ex rel. Miller v. Manpow, LLC*, Case No. 2:21-cv-05418-VAP-ADSx, 2023 WL 8290402, at *4 (C.D. Ca. Aug. 30, 2023); *United States v. Halifax Hosp. Med. Ctr.*, 997 F. Supp.2d 1272, 1278-1279 (M.D. Fla. 2014); *United States ex rel. Beattie v. Comsat Corp.*, No. 8:96-Civ-T-24MAP, 2001 WL 35992080, at *8 (M.D. Fla. April 18, 2001); *United States ex rel. Butler v. Magellan Health Servs., Inc.*, 74 F. Supp.2d 1201, 1212 (M.D. Fla. 1999); *United States ex rel. El Amin v. George Washington Univ.*, 26 F. Supp.2d 162, 169-170 (D.D.C. 1998); *United States ex rel. Givler v. Smith*, 775 F. Supp. 172, 179 (E.D. Pa. 1991); *United States ex rel. Troung v. Northrop Corp.*, 728 F. Supp. 615, 622-624 (C.D. Ca. 1989); *United States ex rel. Stillwell v. Hughes Helicopters, Inc.*, 714 S. Supp. 1084, 1094-1096 (C.D. Ca. 1989).

Given this substantial authority, the Court need only briefly review the reasoning for these holdings to provide context for the balance of this discussion.

"Supreme Court precedent requires an 'officer' to have 'tenure, duration, emolument, and duties [that are] continuing and permanent, not occasional or temporary." *United States ex rel. Gonite v. UnitedHealthcare of Georgia, Inc.*, CIVIL ACTION NO. 5:19-cv-246 (MTT), 2025 WL 1184109, at *3 (M.D. Ga. April 23, 2025) (quoting *United States v. Germaine*, 99 U.S. 508, 511-12 (1878)).

A relator's duties "are temporary and not continuous." *Id.* "His authorization to litigate under the FCA is not permanent and his position only exists for the duration of the lawsuit." *Id.* (citations omitted).

"Instead, the Government restricts his power as a civil litigant: the Government can intervene, monitor and limit discovery, and settle the action without relator's consent." *Id.* (cleaned up). *See also United States v. Boeing Co.*, 9 F.3d 743, 759 (9th Cir. 1993) ("We conclude that a qui tam relator, who litigates only a single case, does not have 'primary responsibility' within the meaning of *Buckley* [*v. Valeo*, 424 U.S. 1 (1976)] for enforcing the FCA. Nor does a relator exercise authority 'so significant' that the Constitution only permits an officer of the United States to exercise it.")[3]; *United States ex rel. Troung v. Northrop Corp.*, 728 F. Supp. 615, 623 (C.D. Ca. 1989) ("To begin with, it seems relatively clear that the relators are not 'officers' within the meaning of the [Appointments] Clause. They enjoy limited powers, have no formal duties, hold no established office, have no prescribed tenure, and receive no federal emoluments.").[4]

While the Second Circuit has not addressed this exact issue, it has considered, and rejected, a challenge to the FCA's *qui tam* provisions under Article III of

---

[3] The Ninth Circuit made it clear that its reasoning applied both where the Government intervenes and where it does not. *Id.* at 758. *See also United States ex rel. Resolution NJ LLC v. Riverside Med. Grp., P.C.,* Civil Action No. 22-04165 (SDW) (LDW), 2024 WL 4100372, at *5 (D.N.J. Sept. 6, 2024) ("Relator's claims are constitutional despite the Government declining to intervene."), *vacated in part on other grounds*, 2024 WL 5182395 (D.N.J. Dec. 20, 2024).

[4] Defendant's reliance on *United States v. Donziger*, 38 F.4th 290 (2d Cir. 2022), is misplaced. The Court there held that special prosecutors are officers under the Appointments Clause "because they wield federal prosecutorial power and hold a position that is not personal to a specific individual and may last for years." *Id.* at 294. That, of course, is not true of relators.

the Constitution. *See United States ex rel. United States ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1154 (2d Cir. 1993).

In *Kreindler*, the Court held that separation-of-powers concerns are not violated by affording standing to *qui tam* plaintiffs under the FCA. *Id.* at 1154-1155. Importantly, the Court also observed: "Finally, the FCA *qui tam* provisions do not usurp the executive branch's litigating function because the statute gives the executive branch substantial control over the litigation." *Id.* at 1155 (citations omitted).

This latter observation aligns with the reasoning of courts of appeals which have rejected Article II challenges to the *qui tam* provisions of the FCA. *See, e.g., Kelly*, 9 F.3d at 758 ("We have concluded that the Executive Branch retains 'sufficient control' of relators such that their exercise of authority to sue on behalf of the United States does not 'impermissibly undermine' executive functions. In keeping with that conclusion, we find it impossible to characterize the authority exercised by relators as so 'significant' that it must only be executed by officers appointed in the manner which Article II, § 2, cl. 2 prescribes.") (citing *Buckley*, 424 U.S. at 126).

Boiled down, defendant's position rests essentially on the speculative, non-binding concurrences and dissent in *Polansky,* and on *Zafirov*, the minority decision from the Middle District of Florida.

As to *Polansky*, the three Justices there merely expressed interest in a legal question that was not before the Court. "However, notably, no Justice has stated his or her opinion or how they would rule in light of the facts of a given case." *United States ex rel. Butler v. Shikara*, 748 F. Supp.3d 1277, 1295 (S.D. Fla. 2024).

Second, *Zafirov* is neither binding nor persuasive. It also has been criticized, both for its analysis and its departure from the caselaw discussed above. *See United States ex rel. Penelow v. Janssen Prods., LP*, Civil Action No. 12-7758 (ZNQ) (JBD), 2025 WL 937504, at *12 (D. N. J. Mar. 28, 2025) (Defendant "relies on "a recent decision in the Middle District of Florida in which the district court departed from the longstanding and nationwide consensus that these provisions do not violate the separation of powers, and instead held that the *qui tam* provisions are an unconstitutional exercise of executive power."); *United States ex rel. Adams v. Chattanooga Hamilton Cnty. Hosp. Auth.*, Case No. 1:21-cv-84, 2024 WL 4784372, at *3 (E.D. Tenn. Nov. 7, 2024) ("A single, outlier trial-court decision that whistles past precedent binding on this Court provides no basis to ignore that precedent here.").

In sum, while the Second Circuit has not directly considered an Appointments-Clause challenge to the FCA's *qui tam* provisions, the vast weight of the authorities leads the Court to conclude that the provisions are constitutional.

**The Vesting and Take Care Clauses**

Defendant also argues that the FCA's *qui tam* provisions violate the Vesting and Take Care Clauses of the U.S. Constitution. Dkt. #171-2, pp. 26-29.

Section 1, Clause 1 of Article II states that the executive power "shall be vested in the President of the United States," and Section 3 states that the President "shall take Care that the Laws be faithfully executed."

Defendant's argument under these clauses is also foreclosed by many of the above authorities which hold that the *qui tam* mechanism of the FCA, with or without Government intervention, "was crafted with particular care to maintain the primacy of the Executive Branch in prosecuting false-claims actions." *United States v. Rockwell Int'l Corp.*, 282 F.3d 787, 807 (10th Cir. 2002). *See also Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753-757 (5th Cir. 2001) (rejecting challenge to *qui tam* provisions under Take Care Clause); *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994) (similar); *United States v. Boeing Co.*, 9 F.3d 743, 749-757 (9th Cir. 1993) (similar); *United States ex rel. Gonite v. UnitedHealthcare of Georgia, Inc.*, CIVIL ACTION NO. 5:19-cv-246 (MTT), 2025 WL 1184109, at *4 (M.D. Ga. April 23, 2025) (*qui tam* provision does not violate Take Care Clause); *Butler,* 748 F. Supp.3d at 1296-1297 (same); *United States ex rel. Wallace v. Exactech, Inc.*, 703 F. Supp.3d 1356, 1364-1366 (N.D. Ala. 2023) (same).

The Court thus finds defendant's arguments under these two clauses to be without merit.

It will thus be recommended that defendant's motion for judgment on the pleadings be denied.

**Motion for Leave to Amend Answer**[5]

The final issue before the Court is defendant's request that it be permitted to amend its answer to assert the affirmative defense of unconstitutionality. Dkt. #171-2, p. 30.

Federal Rule of Civil Procedure 15 provides that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Nevertheless, it is within the sound discretion of the district court to grant or deny leave to amend." *Dolac,* 2020 WL 2840071, at *2 (citation and internal quotation marks omitted).

"A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* A proposed

[5] Although motions to amend a complaint are typically considered non-dispositive, where they are decided on the grounds of futility, courts in this district treat them as dispositive. *Dolac v. Cnty. of Erie*, 17-CV-1214 (JLS), 2020 WL 2840071, at *1, n.2 (W.D.N.Y. June 1, 2020) (citations omitted). Therefore, the Court makes its determination here in the form of a Report and Recommendation. *Id.*

amendment is futile if it "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Id.*

For the reasons discussed above, the unconstitutionality defense "is plainly futile." *United States ex rel. Adams v. Chattanooga Hamilton Cnty. Hosp. Auth.*, Case No. 1:21-cv-84, 2024 WL 4784372, at *2 (E.D. Tenn. Nov. 7, 2024) (denying defendant's motion for leave to amend its answer to assert defense that *qui tam* provisions violate the Appointments Clause).

It will thus be recommended that defendant's request to amend its answer be denied.

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion for judgment on the pleadings or for leave to amend its answer be denied.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute, Fed .R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED: Buffalo, New York
May 9, 2025

**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**